# IN THE SUPREME COURT OF IOWA

No. 15–0573

Filed March 25, 2016

Amended June 9, 2016

**IN RE THE MARRIAGE OF ANGELA MARIE HARRIS AND PATRIC DAVID HARRIS,**

Upon the Petition of
**ANGELA MARIE HARRIS,**

      Appellant,

And Concerning
**PATRIC DAVID HARRIS,**

      Appellee.

---

Appeal from the Iowa District Court for Polk County, Rebecca Goodgame Ebinger, Judge.

A mother appeals the district court's denial of her petition to modify the child custody and physical care provisions of a marriage dissolution decree. **REVERSED AND REMANDED WITH INSTRUCTIONS.**

Earl B. Kavanaugh and Jaclyn M. Zimmerman of Harrison & Dietz-Kilen, P.L.C., Des Moines, for appellant.

Larry L. Ball Jr., Altoona, for appellee.

**HECHT, Justice.**

In this case, we determine whether a parent proved a substantial change in circumstances justifying a modification of custody of the divorced parents' two children. The district court concluded the communication issues between the parents with joint legal custody and joint physical care did not rise to the level of a substantial change in circumstances affecting the best interests of the children. On de novo review, we reach a different conclusion. We conclude the circumstances affecting the best interests of the children have substantially changed and therefore order a modification of the custodial arrangement. We modify the custody provisions of the decree and remand for determination of child support and visitation issues based upon the parties' current circumstances.

## I. Background Facts and Proceedings.

Angela and Patric Harris married in 1997. They had two children together—a daughter born in 2001 and a son born in 2009. Alleging a breakdown of the marriage relationship, Angela filed a petition for divorce in November 2010. Soon after that, the parties participated in mediation and agreed to joint legal custody and joint physical care of the children pending the trial of the case. Under the interim mediation agreement, the children continued living in the family home and the parents alternated as physical care providers.

In April 2011, the parties attended a second mediation addressing custody issues in the pending dissolution action. In the resulting written agreement, the parties reaffirmed their interim rotating custodial protocol. The weekly protocol followed a 2-2-3 pattern commencing on each Monday with the parents rotating in and out of the family home.

While the dissolution action was still pending, the family home was the subject of a foreclosure action. The home was sold and the interim joint physical care arrangement continued with the children moving back and forth between their parents' postseparation residences according to the same 2-2-3 weekly pattern. In a typical two-week period for example, the children were under Angela's care on Monday and Tuesday; Patric provided physical care for the children on Wednesday and Thursday; and the children returned to Angela's home Friday through Sunday. During the following week, the children spent Monday and Tuesday and the weekend with Patric.

During the pendency of the dissolution proceeding, the parents' communications were strained. On one occasion, Patric filed a motion with the court requesting enforcement of the interim agreement. The court enforced the agreement. In June 2012, Angela filed a domestic abuse petition and obtained a temporary protective order preventing Patric's regularly scheduled contact with the children. Patric challenged the protective order and the district court entered a temporary order resuming the joint physical care arrangement. The domestic abuse petition was dismissed.

A trial of child custody and support issues[1] commenced on September 27, 2012. After hearing testimony from Angela, Angela's witnesses, and Patric, the district court entered a dissolution decree providing in pertinent part as follows:

> The Court has considered all of the factors set forth in Iowa Code § 598.41(3). Based on the record made, there is no evidence that awarding joint physical care is not in the best interests of the children. *See* Iowa Code § 598.41(5)(a).

---

[1]By the time of trial, the parties had reached agreement on the division of their property.

> All of [the] evidence is that the children have been thriving over the past two years. [The parties' daughter] is doing well in school. [The parties' son] is developing well for his age. Both benefit from frequent contact with both parents. Both parents have been actively involved in caring for the children and in their activities. The Court finds that the joint legal custody and joint physical care arrangement under which the parties have operated for the past two years should continue, and is in the best interests of the children.

The decree called for the continuation of the rotating custodial framework that the parties had agreed upon in mediation and followed during the previous two years. The decree further directed the parties to "consult with one another with respect to the minor children's education . . . , medical care, extra-curricular activities," and other matters relating to the children. It additionally provided that the "parties shall jointly discuss and be involved with major decisions concerning the welfare of the minor children, including, but not limited to, health care, . . . residence, schooling, and similar matters."

Angela appealed. On de novo review, this court concluded both parties were involved in caring for the children who were thriving under the joint physical care arrangement. *In re Marriage of Harris*, No. 12–1969, 2013 WL 5394283, at *5 (Iowa Sept. 20, 2013) (per curiam). We affirmed the district court's decision. *Id.*

Angela filed a petition for modification on October 22, 2013. She alleged several changes justifying a modification of the custodial arrangement had occurred after the 2012 dissolution decree: (1) parental communication problems, (2) Patric's failure to support the relationship between Angela and the children, (3) changes in the medical condition of the children, and (4) failure of the joint physical care arrangement in serving the best interests of the children. Patric's answer alleged Angela's "troubling behavior" had continued and substantially escalated

since the 2012 decree. In particular, he alleged Angela had sought medical care for the daughter without consulting him.

The court appointed a custody evaluator who interviewed witnesses, met with the parties and observed their interactions with the children, inspected the living arrangements offered by each parent, performed psychological evaluations of the parties, and reviewed the parties' employment histories and status.[2] In sum, the evaluator's report found both parents enjoy a loving relationship with the children and provide them with safe and structured environments. However, the evaluator opined in her report that "hostile aggressive parenting" stemming from power and control issues between the two parties has caused self-esteem and security issues in the children. The investigator concluded joint physical care has not worked between Patric and Angela. The evaluator further recommended that a primary care parent with the ability to make final decisions be designated; or in the alternative, the evaluator recommended that the court consider sole legal custody. Despite her concerns about the suitability of each parent, the evaluator recommended primary care be allocated to Angela based on her consistent focus on the needs of the children.

At the modification trial, the court received evidence bearing upon the daughter's medical condition. The evidence tended to prove the daughter had exhibited great fear of storms and other severe weather prior to the dissolution. Believing the fear was extreme, Angela and Patric collaborated in obtaining a short course of mental health treatment for the daughter.

---

[2]The evaluator is a licensed social worker with thirty-two years of professional experience. She has undertaken more than 2000 custody evaluations in her career.

In January 2013, Angela concluded the daughter might benefit from additional mental health treatment for anxiety in social situations. In particular, Angela had noted the daughter's difficulties in making and maintaining friendships with peers. Although Patric agreed the daughter was shy, he did not share Angela's belief that the daughter's social skills were so limited as to justify professional evaluation. Angela nonetheless arranged psychological and psychiatric mental health evaluations which led to a diagnosis of Pervasive Development Disorder (PDD), a condition found on the autism spectrum. The evaluating psychologist and psychiatrist recommended a course of treatment including therapy and medication. Believing the daughter was shy, but not ill, Patric did not support the treatment.

Patric objected to the medication (Namenda) prescribed for the daughter because the FDA had approved it and the manufacturer sold it for use by elderly patients with dementia, not children with PDD or other conditions on the autism spectrum. Angela supports the use of the medication and believes the daughter has benefitted from it because she is more outgoing and tends to mumble to herself less frequently since the course of medication started. The treating psychiatrist, Dr. Kavalier, testified that the daughter has shown signs of remarkable improvement while taking the medication[3] despite less than complete dosage compliance resulting from Patric's refusal to provide it for the daughter when she is in his care.

---

[3]Dr. Kavalier testified he has been prescribing Namenda "off label" for patients with PDD and autism for approximately ten years. He cited a study suggesting a high percentage of such patients significantly improved while taking the drug and testified he prescribes it for patients with PDD and other conditions on the autism spectrum.

Patric took the daughter to the University of Iowa for an evaluation in August 2014 and obtained a second opinion. Although the psychologist at the University of Iowa did not concur with the PDD diagnosis, she found the daughter "is shy, and has some anxiety and social immaturity." The psychologist diagnosed delayed social development, anxiety disorder, and childhood shyness, and opined the daughter would benefit from counseling to address her worries and fears. The psychologist also recommended that the daughter receive specific social skills instruction and continue her participation in a social skills group. To promote enhancement of the daughter's interpersonal skills and increase her social opportunities, the psychologist urged enrollment in academic and extracurricular enrichment activities.

Angela presented evidence tending to prove she and Patric have been unable to agree on extracurricular activities for the children. Angela attributed this disagreement to Patric's reflexive resistance to every proposal she makes on the ground that practice and game schedules invade his time with the children. Angela testified the children discontinued participation in soccer and martial arts because Patric consistently failed to transport them to scheduled activities when the children were in his care. Patric testified he is not opposed to the children's participation in activities, but he objects to Angela's tendency to enroll the children in activities without consulting him.

After hearing the testimony and reviewing the evidence, the district court denied the petition for modification. The court acknowledged the tension in the parties' discordant views about the daughter's health and appropriate treatment for it. However, the court found Patric's opposition to the daughter taking medication that had not been approved by the FDA for use in this context did not suggest unwillingness to meet

the daughter's medical needs. The court further found the daughter's anxiety problem and the parties' exploration of treatment options for that condition occurred in 2010, well before the dissolution decree was entered. Accordingly, the court concluded the daughter's medical condition and treatment for it did not support a finding of a substantial change of circumstances.

The court determined Angela's testimony blaming Patric for the parties' communication problems was not credible. The court found Angela caused some of the communication problems because she did not consistently provide Patric with information pertaining to the children or consult him before making decisions affecting the children. Noting similar findings on Angela's contribution to the communication problems in the 2012 dissolution decree, the court concluded the record did not establish a substantial change in parental communication affecting the best interests of the children. The court also found that although the record evidenced some acrimony between the parents, the dissolution decree noted similar evidence in 2012. Accordingly, the court found no substantial change in Patric's support of the relationship between Angela and the children.

The district court found the parties have been able to address most parenting issues with the exception of the discord surrounding the daughter's health and some disagreements with respect to the children's participation in extracurricular activities. Despite the areas of parental disagreement, the court noted the witnesses consistently testified that both parents clearly love the children who are "great kids."

Because the decision denying the petition to modify the decree did not follow the custody evaluator's recommendation, the court detailed its reasons for assigning the evaluator's report little weight. The court noted

the evaluator gave great weight to "the history before the decree and [made] a determination of what the original custody arrangement should, in her view, have been." However, because this was a modification action rather than an original custody determination, the court concluded the evaluator's report and opinion on the need for modification of the custodial arrangement carried limited probative force.

Angela appeals, contending the district court erred in finding no substantial change in circumstances. She urges this court to find a substantial change of circumstances because the history since the 2012 decree demonstrates the parties are unable to communicate in making even routine decisions regarding the children and because the rotating physical care schedule is harmful to the children. Angela contends she proved she is the party best able to minister to the needs of the children and requests she be granted sole legal custody and primary physical care of the two children.

Patric argues on appeal that Angela failed to prove a substantial change in circumstances affecting the welfare of the children and the district court properly concluded a modification of the original decree is unwarranted. He seeks to maintain the joint legal custody and shared physical care arrangement. However, if this court finds a substantial change in circumstances has occurred, Patric alternatively requests sole legal custody and primary physical care of the children be placed with him.

## II. Scope of Review.

"Petitions to modify the physical care provisions of a divorce decree lie in equity." *In re Marriage of Hoffman,* 867 N.W.2d 26, 32 (Iowa 2015). Thus, we review the district court's decision de novo. *In re Marriage of Sisson,* 843 N.W.2d 866, 870 (Iowa 2014). Though we make our own

findings of fact, we give weight to the district court's findings. *See In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013) ("We give weight to the findings of the district court, particularly concerning the credibility of witnesses; however, those findings are not binding upon us.").

### III. Findings and Analysis.

A party seeking modification of a dissolution decree must prove by a preponderance of the evidence a substantial change in circumstances occurred after the decree was entered. *In re Marriage of Jacobo*, 526 N.W.2d 859, 864 (Iowa 1995). The party seeking modification of a decree's custody provisions must also prove a superior ability to minister to the needs of the children. *See In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983).

The changed circumstances affecting the welfare of children and justifying modification of a decree "must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary." *Id.* The party seeking to modify a dissolution decree thus faces a heavy burden, because once custody of a child has been fixed, "it should be disturbed only for the most cogent reasons." *Id.*; *see also Hoffman*, 867 N.W.2d at 32; *In re Marriage of Weidner*, 338 N.W.2d 351, 360 (Iowa 1983).

Iowa courts have generally affirmed or maintained joint custody arrangements for parents who demonstrate they are able to put aside their differences for the sake of their child or children. *See, e.g., In re Marriage of Stafford*, 386 N.W.2d 118, 121 (Iowa Ct. App. 1986) ("The record is filled with examples of tension, selfishness, and anger on the part of all the adults involved in this case. However, abdication of joint custody is not the solution."); *In re Marriage of Ertmann*, 376 N.W.2d 918,

920 (Iowa Ct. App. 1985) ("We believe that the communication difficulties . . . did not warrant denial of a joint custodial arrangement. Both parties expressed a willingness to communicate for [their daughter]'s sake."); *In re Marriage of Short*, 373 N.W.2d 158, 160 (Iowa Ct. App. 1985) ("The parties need not be in agreement at all times in order to justify joint custody; it is enough that they can communicate regarding [their son]'s needs and support each other's relationship with him."). Indeed, if one party requests joint custody, a court denying the request must "cite clear and convincing evidence . . . that joint custody is unreasonable and not in the best interest of the child to the extent that the legal custodial relationship between the child and a parent should be severed." Iowa Code § 598.41(2)(*b*) (2013).

However, Iowa courts have modified custody when "shared custody provisions . . . incorporated into the decree have not evolved as envisioned by either of the parties or the court" or when the parents simply "cannot cooperate or communicate in dealing with their children." *In re Marriage of Walton*, 577 N.W.2d 869, 870 (Iowa Ct. App. 1998); *see also In re Marriage of Swenka*, 576 N.W.2d 615, 617 (Iowa Ct. App. 1998) (allocating primary physical care to one parent because the parents could "not cooperate and d[id] not respect the parenting or lifestyles of the other"); *In re Marriage of Garvis*, 411 N.W.2d 703, 706–07 (Iowa Ct. App. 1987) (crediting a court-appointed evaluator's opinion that "the chances were . . . slim that [a joint custody] arrangement would be successful" and noting, "while both parties stated that they could communicate with each other regarding the children's welfare, their record of performance belied these statements"); *In re Marriage of Stanley*, 411 N.W.2d 698, 701 (Iowa Ct. App. 1987) ("The continued inability or unwillingness of parents to cooperate is a factor in determining if a custody modification is

appropriate."). An "important factor to consider in determining whether joint physical care is in the child's best interest is the ability of the spouses to communicate and show mutual respect." *In re Marriage of Hansen*, 733 N.W.2d 683, 698 (Iowa 2007). As the court of appeals noted in *Melchiori v. Kooi*,

> Discord between parents that has a disruptive effect on children's lives [is] a substantial change of circumstance that warrants a modification of the decree to designate a primary physical caregiver if it appears that the children, by having a primary physical caregiver, will have superior care.

*Melchiori v. Kooi*, 644 N.W.2d 365, 368 (Iowa Ct. App. 2002). We conclude the shared physical care provisions in this case have not evolved as envisioned and the children will benefit from a modification that designates a primary physical caregiver.

We find the district court's implicit confidence in these parties' ability to communicate in the best interests of the children under a joint physical care arrangement was misplaced. *See In re Marriage of Rolek*, 555 N.W.2d 675, 677 (Iowa 1996) ("[T]he district court was apparently hopeful that the parties were capable of cooperating in those matters affecting the best interests of their children. It is now quite clear that this is not the case."); *Walton*, 577 N.W.2d at 870. Patric and Angela are unable to communicate civilly in person. The depth of their animosity toward each other is not lost on the children. The custody evaluator reported that the daughter is troubled by her parents' behavior and wishes her parents would "get their act together." *See Garvis*, 411 N.W.2d at 706–07 (concluding "reluctantly but firmly" that shared physical care was unworkable when the parents' anger and animosity clearly affected their children). We credit the testimony of Angela's

paramour, Curtis Kallesen, who provided the following account of Patric's behavior during the exchange of the children:

> Q: [W]hen the . . . drop-offs and exchanges happen with Patric, what have you observed about them with regard to Mr. Harris'[s] interaction with Ms. Harris? A: It's usually pretty hostile. Typical—
>
> Q: On whose part? A: Mr. Harris. . . . I've seen Angi many times walking six f[ee]t behind him, and you know, saying "Patric? Patric, do you want to—Do you want to know what's going on?" Or "Is there something, you know, you want to tell me?" And he will just get in the truck, slam the door and race away. And if he is picking up, it's usually about the same thing. He'll snatch the kids up and throw them in the truck. And it's basically—every time I'm around, it's like he doesn't even see or hear Angi at all.

Kallesen's characterization of the interpersonal dynamics between Patric and Angela is consistent with other evidence in the record. The parties prefer to utilize email communications because they are less likely than in-person conversations to produce conflict and because they create a record. We find the parties' perception of a need for a record of their communications speaks volumes about the virulence of their animosity and their lack of trust and respect for each other. Like the custody evaluator, we are now convinced the parties are unwilling to maintain a relationship with civil communication that is a feature of a suitable joint physical care arrangement in the best interest of their children.[4] We conclude the persistence of dysfunctional communication

---

[4]The custody evaluator reported this case is

> marked with hostile aggressive parenting in its purest form. . . . Clearly, joint physical care has not worked at any level in this case. The focus has not been on the children's needs, it has been on 'winning' issues. . . . Of even greater concern, is the intense and unrelenting anger of both parents. Their anger is so extreme, they are unable to come to any kind of agreement on even minor issues. The end result is that the children have inconsistent care and instability. This has caused major problems for the children . . . .

between Patric and Angela was not contemplated by the district court when the 2012 dissolution was entered and, sadly, the record in this case gives us no indication communication is likely to improve in the near term unless both parents decide to change their attitudes for the benefit of the children. *See In re Marriage of Eilers*, 526 N.W.2d 566, 569 (Iowa Ct. App. 1994) ("Correspondence from a court-appointed counselor documents the level of animosity between these parents and no realistic hope is offered to believe their relationship will change.").

Since the 2012 decree, the parties have also demonstrated their inability to agree on important matters pertaining to the health and behavior of their children. As we have noted, the parties have had discordant perceptions of their daughter's development delays and her need for treatment. Patric believes the daughter is merely a shy child in the maturation process who is overprotected by Angela. Believing the daughter might have substantial developmental deficits, Angela arranged for a psychological and psychiatric evaluation in January 2013 during the pendency of her appeal from the dissolution decree.[5]

The parties strongly disagree about whether the treatment prescribed by Dr. Kavalier for the daughter as a consequence of the evaluation is appropriate. We find this disagreement has led to an

---

[5]Although the 2012 decree required her to inform and consult Patric about matters pertaining to the medical conditions and appointments pertaining to the children, we find Angela failed to consult Patric prior to making the appointment for the evaluation in 2013. This failure on Angela's part does not reflect favorably on her as a custodial parent. *See In re Marriage of Zabecki*, 389 N.W.2d 396, 399 (Iowa 1986) (noting the trial court "was right in admonishing" one parent for changing a child's school and discontinuing his extracurricular activities without consulting the other parent); *In re Marriage of Mayfield*, 577 N.W.2d 872, 874 (Iowa Ct. App. 1998) ("It is disappointing [one parent] obtained new employment and planned a move without consulting [the other parent]. . . . We consider her making these decisions without [the other parent]'s input adverse to her position.").

unacceptable impasse between the parents. Because Patric does not approve of Namenda for the treatment of his daughter, he refuses to administer it when he is providing the children's physical care. Although we find Patric's disapproval of the off-label use of the medication for the daughter is sincere, we credit the testimony of Angela and Dr. Kavalier who testified that the daughter's functioning has improved during her course of treatment with the drug.[6] We conclude the discord between the parents on the daughter's need for treatment and the suitability of the treatment Angela has obtained for her is another factor militating against the continuation of the joint custodial arrangement between Patric and Angela.

The trial record in this case also reveals disharmony in the parties' perceptions of their son's behavior and their responses to it. Before the dissolution decree was entered, the son had exhibited some aggressive behavior toward other children. Angela thought a professional evaluation of the child might be helpful. Patric had not noticed the son behaving aggressively, and he therefore did not believe a professional evaluation was necessary. We find Patric's claimed lack of awareness of the son's behavior issues not credible, however, because the son was so disruptive and unmanageable in day care that he was no longer welcome there. Despite Patric's views on the subject, Angela sought treatment she deemed necessary for the son in May of 2013. We find Angela's perception of the seriousness of the son's behavior issues was accurate

---

[6]Although the psychologist who evaluated the daughter at the University of Iowa did not agree with Dr. Kavalier's diagnosis of PDD, she did opine the daughter would benefit from counseling for issues arising from delayed social development. Notably, we find no expert testimony in the record challenging Dr. Kavalier's prescription of Namenda for the treatment of the daughter's condition or asserting the drug has had no salutary effect.

and her decision to pursue treatment was appropriate under the circumstances. We conclude the parties' inconsistent perceptions of the nature of the son's behavior and their differing views about the need for professional assistance in responding to it are further evidence a modification of the physical care arrangement is required here.

The children's extracurricular activities have been another source of contention between the parties. The children were previously both involved in Taekwondo, and the son also participated in soccer. Angela initiated and scheduled all of these activities. Patric objected because he believed Angela initiated the scheduled activities without his input and because they consumed too much of his time with the children. The children sometimes missed their activities because Patric did not transport them when he was providing physical care. At the time of the trial of the modification proceeding, the children were no longer participating in extracurricular activities because their parents could not agree and cooperate. Although Patric testified he is not categorically opposed to the children's participation in extracurricular activities, he has not promoted those initiated for the children by Angela or arranged other activities acceptable to him and the children. We find the parents' unwillingness to cooperate in the identification of extracurricular activities for the children is further evidence of the failure of the joint physical care relationship in this case. The absence of parental cooperation in this area is of heightened significance because the report of the psychological evaluation at the University of Iowa expressly encouraged the daughter's involvement in extracurricular activities providing opportunities for greater socialization.

On de novo review of the record, we find a substantial change of circumstances has occurred since the dissolution decree was entered in

2012. We conclude the change—the abject failure of the joint physical care arrangement—is more or less permanent and it was not contemplated by the district court at the time of the dissolution.

Although we find she is not blameless in the failure of the custodial arrangement prescribed by the dissolution decree, we conclude Angela proved she is better suited than Patric to minister to the needs of the children. This finding is based on her perception of the children's behaviors, her decision to pursue professional evaluations for the children, and her commitment to accomplish treatment recommendations. The finding is also based on her understanding of the children's needs for socialization through extracurricular activities—especially in addressing the daughter's delayed socialization. *See In re Marriage of Hubbard*, 315 N.W.2d 75, 82 (Iowa 1982) (preferring a parent who "worked diligently to correct the educational deficiencies of his children" by involving them in extracurricular activities, and who had "been responsible in securing medical treatment"); *Jones v. Jones*, 251 Iowa 1148, 1151, 1155, 104 N.W.2d 449, 450–51, 453 (1960) (considering fact that one parent supported their child's musical interests and talents while the other parent discouraged them). Accordingly, we conclude Angela should have primary physical care of the children, and a schedule for visitation by Patric shall be established.

We emphasize, however, that allocating physical care of the children to Angela does not deprive Patric of his "[r]ights and responsibilities as joint legal custodian . . . to equal participation in decisions affecting the child[ren's] legal status, medical care, education, extracurricular activities, and religious instruction." Iowa Code § 598.41(5)(*b*). We also emphasize the parents' ongoing mutual responsibility to cooperate in the best interests of the children. Our

decision in this case to modify the joint physical care provisions of the decree is strongly affected by the parents' failure to cooperate in addressing the behavioral and medical issues of the children and in promoting the extracurricular interests of the children. If the modification ordered here does not achieve more mature parental communication and cooperation by *both* parents in furtherance of the best interests of the children, the remedy of sole legal custody remains an option in any future modification proceedings. *See* Iowa Code § 598.41(2)(*b*) (providing if joint custody is not ordered, court shall cite "clear and convincing evidence . . . that joint custody is unreasonable and not in the best interest of the child to the extent that the legal custodial relationship between the child and a parent should be severed"); *Walton*, 577 N.W.2d at 871 ("The court cannot order an awakening by the parties . . . . This is something [the parents] must do on their own."); *Garvis*, 411 N.W.2d at 707 ("[W]hatever discord that may exist between [divorced parents] must end when the well-being of their children is involved.").[7]

Both parties were contemplating changes of residence at the time of the modification trial, and their employment and economic circumstances affecting child support may have changed during the pendency of this appeal. We therefore remand this case to the district court for a determination of a suitable visitation schedule and appropriate child support calculations.

---

[7]At trial, Patric testified he was willing to work with a parenting coordinator to improve communications with Angela. On remand the parties and district court may consider appointing or retaining a parenting coordinator. *See generally* Christine A. Coates, *The Parenting Coordinator as Peacemaker and Peacebuilder*, 53 Fam. Ct. Rev. 398 (2015) (describing parenting coordinators and discussing strategies and techniques they can employ in working with high-conflict parents).

**IV. Conclusion**.

We modify the dissolution decree and allocate to Angela the primary physical care of the children. We remand to the district court for establishment of a visitation schedule and determination of child support based upon the parties' present circumstances.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**

Cady, C.J., and Appel and Zager, JJ., join this opinion. Wiggins, J., files a dissenting opinion in which Waterman, J., joins. Mansfield, J., files a separate dissenting opinion in which Waterman, J., joins.

**WIGGINS, Justice (dissenting).**

I dissent. Iowa law is well-settled that the party seeking modification of a decree must prove by a preponderance of the evidence "that conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change." *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983). The court entering the decree must not have contemplated the change in circumstances when it entered the original decree. *Id.* Additionally, the change in circumstances must "be more or less permanent, not temporary." *Id.* Finally, the parent seeking a modification of custody "must prove an ability to minister more effectively to the children's well-being." *Id.* A party who seeks to modify custody must meet this heavy burden because once a court fixes custody "it should be disturbed only for the most cogent reasons." *Id.*

This record lacks sufficient evidence to prove by a preponderance of the evidence that a material and substantial change in circumstances occurred after the district court entered its original decree, nor does it contain sufficient evidence to prove Angela has the ability to minister more effectively to the children's well-being. The district court entered the original decree on October 4, 2012. Angela appealed. We affirmed the original decree on September 20, 2013. On October 22, Angela filed this modification action. On March 3, 2015, the district court refused to modify the decree. On April 1, Angela appealed again.

The purpose of this rendition of the facts is to point out that Angela never gave the joint custody award a chance to work. When the district court entered the original decree, it considered the communication problems the parties had. However, I am confident the

district court determined that after the animosity from the dissolution proceedings ended and the parties started focusing on being parents, rather than adversaries, the joint custodial relationship would work. The district court contemplated the communication problems would exist until the parties left litigation mode and shifted to parenting mode. Until the parties complete the adversarial process and refocus their energies on parenting, I cannot find a material and substantial change of circumstances occurred such that the children's best interests make it expedient to modify custody.

Moreover, I believe Angela's continued litigious posture shows she is unable to minister more effectively to the children's well-being. In contrast, the majority relies upon Angela's relentless and continuous litigious activity to conclude a change of circumstances occurred. The majority has essentially reversed our decision of September 20, 2013, and awarded Angela physical custody of the children without holding her to the high burden set forth in *Frederici*. In doing so, the majority gives Angela what she wanted all along.

The majority also misunderstands the legal rights of the parents in awarding Angela sole physical care, while retaining joint legal custody. The Code provides, "Rights and responsibilities as joint legal custodian of the child include but are not limited to equal participation in decisions affecting the child's legal status, medical care, education, extracurricular activities, and religious instruction." Iowa Code § 598.41(5)(*b*) (2013). When parties with joint legal custody dispute a child's medical care, education, extracurricular activities, or religious instruction, they should submit their dispute to the court, not seek a modification. Here, the communication problems between the parties stem from a dispute over medical care for the children. The majority disregards section

598.41(5)(*b*) by siding with Angela and not allowing the district court to decide this dispute as required by the Code.

For all these reasons, I would affirm the district court decision denying the modification.

Waterman, J., joins this dissent.

**MANSFIELD, Justice (dissenting).**

I respectfully dissent. I would defer to the findings and conclusions of the district judge who saw and heard this proceeding firsthand and who declined to modify physical care. *See In re Marriage of Ford,* 563 N.W.2d 629, 631 (Iowa 1997) ("In assessing a custody order, we give considerable weight to the judgment of the district court, which has had the benefit of hearing and observing the parties first-hand."). In my view, the thoroughness of the district court's order speaks for itself.

This court has repeatedly said that "once custody of children has been fixed it should be disturbed only for the most cogent reasons." *In re Marriage of Hoffman,* 867 N.W.2d 26, 32 (Iowa 2015) (quoting *In re Marriage of Frederici,* 338 N.W.2d 156, 158 (Iowa 1983)); *In re Marriage of Udelhofen,* 444 N.W.2d 473, 474 (Iowa 1989) (same); *In re Marriage of Zabecki,* 389 N.W.2d 396, 398 (Iowa 1986) (same). In this case, Angela filed for modification just eleven days after our affirmance of the original dissolution decree became final. Following a three-day trial, the district court denied modification. Now the court reverses the trial court's denial of modification. I fear that the effect of this decision will be the opposite of what the court intends—namely, it will encourage more petitions for modification.

I think my colleagues overstate the matter considerably when they say that joint physical care in this case has been an "abject failure." With hindsight, one might argue that giving one parent primary physical care would have been preferable, or at least that a back-and-forth 2-2-3 arrangement should have been avoided. But I do not see the catastrophe that the majority perceives.

The major issue is the daughter's medical diagnosis and treatment. Kavalier & Associates and the University of Iowa have different views. The district court heard directly from Dr. Kavalier and was skeptical about his diagnosis and course of treatment. Unlike Dr. Kavalier, the University of Iowa found that the child was not in the autism spectrum but mainly had some deficits in social skills. Reviewing the record in its entirety, the latter assessment seems entirely plausible. Notably, this thirteen-year-old girl made clear to the custody evaluator that she liked the existing joint physical care arrangement and wanted to continue it.

The remaining issues are less substantial. Because of unacceptable behavior, the son was asked to leave daycare two years before the modification hearing. He was allowed to transfer to another daycare run by the same company. By the time of the modification hearing, he was doing well at kindergarten in public school.

The acrimony between Angela and Patric is undeniable and unfortunate. But I think the court is perhaps somewhat naïve when it criticizes ex-spouses for communicating primarily by email. I would also hesitate to infer too much from the testimony of Angela's paramour that Patric is rude and uncommunicative when the children are exchanged in the paramour's presence. The district court did not deem that testimony significant enough to mention in its detailed ruling.

Lastly, the court brushes past an important point emphasized by both the district judge who heard the initial dissolution proceeding and the judge who heard the modification—namely, Angela's ongoing tendency to make unilateral decisions on matters such as schooling, extracurricular activities, and medical care when the existing orders required advance notification. As noted by the district court below, "Instead of changing her behavior after the decree was entered to comply

with its terms, Ms. Harris has continued with the same behavior and now seeks a modification to accommodate that behavior."

I agree with the district court that both of these parents love their children and that the children's needs are generally being met. Under the standards established by this court, there has been no showing of a substantial change in circumstances that was not within the contemplation of the court when the decree was entered. *See Zabecki*, 389 N.W.2d at 398. I would affirm.

Waterman, J., joins this dissent.