# IN THE COURT OF APPEALS OF IOWA

No. 21-1239
Filed September 21, 2022

**IN RE THE MARRIAGE OF DEVON MARIE WENDLER ALVORD
AND PATRICK ROSS ALVORD**

**Upon the Petition of
DEVON MARIE WENDLER ALVORD,**
  Petitioner-Appellant,

**And Concerning
PATRICK ROSS ALVORD,**
  Respondent-Appellee.
_____

  Appeal from the Iowa District Court for Johnson County, Paul D. Miller,

Judge.

  Devon Wendler Alvord appeals the district court's denial of her petition to

modify the joint-physical-care provision of the dissolution decree. **AFFIRMED.**

  Alexander S. Momany and Mark D. Fisher of Howes Law Firm, P.C., Cedar

Rapids, for appellant.

  Natalie Hope Cronk of Kennedy, Gelner, Cronk & Waterman, P.C., Iowa

City, for appellee.

  Considered by Vaitheswaran, P.J., and Tabor and Badding, JJ.

**VAITHESWARAN, Presiding Judge.**

Devon and Patrick Alvord divorced in 2018. At the time of the divorce, they both lived in the same town in eastern Iowa, and they agreed to joint physical care of their four children, an agreement that the district court approved and made part of the dissolution decree. The agreed-on plan provided for each parent to have the children for two days, with rotating three-day weekends.

Nine months later, Devon petitioned to modify the decree. She alleged "[a]n order placing the minor children in [her] primary physical care would be in the children's best interest" and "[t]he changes in circumstances [that] justif[ied] a modification" included her "planned move to Des Moines, changes in the parties' households, changes in the parties' relative abilities to provide care for the children, and changes in the parties' incomes."

Shortly thereafter, Devon purchased a home in central Iowa. She and Patrick agreed the three youngest children would move in with her at the end of the school year and the oldest child would remain in eastern Iowa. Meanwhile, the COVID-19 pandemic resulted in remote schooling, and the parents agreed to an alternating-week joint-physical-care schedule for the balance of the 2019-2020 school year.

In August 2020, Devon enrolled the three youngest children in her school district for in-person learning. That foreclosed an alternating-week care arrangement. The parents transitioned to weekend transfers. The oldest child remained enrolled in eastern Iowa.

The parents filed a joint pretrial statement in which Devon sought a modification of the dissolution decree to afford her physical care of the children.

Patrick proposed two alternatives: 1) continuation of "the shared care arrangement with modifications to the care schedule" or (2) physical care with him.

The modification petition proceeded to trial at the end of the 2020-2021 school year. The district court denied the petition after concluding Devon "failed to meet her burden of proof to establish that a substantial and material change in circumstances . . . occurred." *See In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016) (requiring proof of a substantial change of circumstances after the dissolution decree was entered and superior caretaking ability). At the same time, the court modified the agreed-on parenting plan contained in the decree to provide for "[a]lternating [w]eekly [c]are" and "two consecutive or non-consecutive one-week (7-day) periods of uninterrupted time during the summer." On appeal, Devon cites several events that, in her view, require reversal.

First, Devon points to her move to central Iowa. The district court determined the move might have constituted a substantial change of circumstances but for the fact that Patrick also intended to relocate to central Iowa. The court found Patrick "sold his house" in eastern Iowa and was "in the process of" moving. The record fully supports that finding. Patrick testified to an upcoming closing date on the sale of his home and stated he was "actively seeking" another home in central Iowa "in the same school district as the children currently reside[d] to facilitate easy transitions." Patrick spoke to the president of his company about transitioning to remote work once he moved. He said it "was an easy decision to make because" it was "evident . . . that the best interest of the children [was] to have access to their family and to their siblings and to be able to participate in all the activities that they want[ed] to participate in and not have to make a choice

between their mother or their father and their activities." On our de novo review, we agree with the district court that Devon's move did not amount to a substantial change of circumstances.

Devon next points to the "changed custodial arrangement" in the year before trial. She also suggests she "assumed the primary caretaker role even before her move" and she "continued" in that role after the move. Again, we are not persuaded these circumstances amount to a substantial change. Devon testified she was historically the parent who managed the children's activities and household duties. But after the dissolution decree was filed, the parents exercised joint physical care and continued that arrangement following Devon's move and the onset of the COVID-19 pandemic. While a return to in-person learning muddied the waters, Patrick removed the long-distance barrier to joint physical care by the time of the modification trial.[1]

The same holds true for claimed "change[s] in employment and relationships." Devon's acceptance of new employment did not affect either parent's ability to maintain a joint-physical-care arrangement. As for new

---

[1] As noted, the district court found no substantial change of circumstances but altered the 2-2-3 day joint parenting plan to an alternating-week plan. Devon suggests that alteration is indicative of a substantial change in circumstances. But she does not argue for a change in the joint-physical-care parenting schedule. Instead, she seeks a wholesale rejection of joint physical care. We are not persuaded the district court's alteration of the parenting schedule reflects a substantial change of circumstances warranting modification of the joint-physical-care provision of the decree. We believe the court's decision to tweak the parenting plan was more akin to an adjustment of a visitation schedule, which may be implemented on less than a showing of a substantial change of circumstances. *See In re Marriage of Brown*, 778 N.W.2d 47, 52 (Iowa Ct. App. 2009) (approving a reduced standard for change of a joint parenting plan and stating,"We believe, however, that a change in the parenting schedule in a joint physical care case is more akin to a change in visitation than a change in custody").

relationships, both parents had partners they apparently knew before the dissolution decree was finalized, and both partners were committed to living in the central Iowa region. There was little indication that the relationships would disrupt a joint-physical-care arrangement.

Devon also cites the "change in emotional needs of the children" and "Patrick's failure to . . . provide proper supervision for the children," as well as other claimed inappropriate behavior. The older two children did indeed experience stress and trauma following the divorce. But Patrick testified the parents "worked proactively to find counseling for" them. They also jointly addressed problematic issues involving the oldest child and jointly imposed consequences. As for Devon's claim that Patrick failed to properly supervise the children, Patrick conceded he left the youngest three children in the care of the oldest, fourteen-year-old child on one or two occasions when all four were with him. There is no indication he made it a practice. With respect to other claimed inappropriate behavior, both parents made some questionable judgment calls. None amounted to a substantial change of circumstances.

Finally, Devon argues there was a breakdown in the ability of the parties to communicate. *See Harris*, 877 N.W.2d at 441 ("An important factor to consider in determining whether joint physical care is in the child's best interest is the ability of the spouses to communicate and show mutual respect." (citation omitted)). The district court addressed the issue as follows:

> Regarding communication and hostility between the parties, both Devon and Patrick admit to behavior they regret. Both have used inappropriate language in describing the other. Devon acknowledged in her testimony that not all communication problems are Patrick's fault and that she is also part of the problem. Devon

also testified that she and Patrick communicate on a regular basis by text or phone regarding the children; that they share information and photos; that they share information about events and their activities; and that this has been an ongoing process.

The court also stated:

After the dissolution, the parties engaged in joint physical care for a lengthy period of time that worked. They figured out a schedule. Additionally, they figured out of a visitation schedule when things broke down. Problems in communication exist, but they do not exceed the usual acrimony that accompanies a dissolution. Some of Devon's communications are aggressive and confrontational and she should not be allowed to use this tactic to obtain physical care.

On our de novo review, we find parental communication was less than ideal. A child and family reporter appointed by the court had conversations with the children, who unanimously condemned both parents for arguing with or denigrating each other.[2] The reporter characterized the parental exchanges as "pathetic" and "awful." At the same time, she declined to take a position on whether Devon established a substantial change of circumstances.

On that score, Patrick testified "there had been issues with communication . . . through the entirety of [the] marriage." Despite those issues, he testified to "[d]aily" communication with Devon by text message. He described the manner in which they worked out a schedule following Devon's move and said the parents cooperated in addressing emergency matters involving the children. With respect to disagreements regarding the children's extracurricular activities, he stated, "[T]he proximity afforded by living in [central Iowa] where the children

---

[2] *See* Iowa Code § 598.12B(2) (2019) ("The court may require a child custody investigator or a child and family reporter to obtain information regarding both parties' home conditions, parenting capabilities, and other matters pertinent to the best interests of the child or children in a dispute concerning custody of the child or children.").

primarily reside eliminates a lot of conflict and creates a lot of opportunity . . . for us to share in getting the kids to and from sports and working as a team."

Devon similarly acknowledged the parents communicated regularly about the children via phone and various electronic methods. She pointed to "many conversations about . . . relocating" that resulted in "an agreement to modify the schedule" and "work out a new schedule with [Patrick]." While she initially testified Patrick did "not honor [her] opinion whatsoever," she later conceded not all the communication problems were Patrick's fault—she had said things she regretted— and she had worked hard to address the issues.

The parents' testimony was corroborated by an administrator at the oldest child's school. He said the parents were "equally involved" and "really tr[ied] to do a good job of keeping each other in the loop when there [was] communication at all regarding anything with school." While his testimony stands in stark contrast to that of the child and family reporter, she acknowledged she was not privy to some of the parents' efforts to jointly resolve issues. We conclude the parents' communication difficulties did not amount to a substantial change of circumstances. *Cf. Harris*, 877 N.W.2d at 442 (concluding "the persistence of dysfunctional communication . . . was not contemplated by the district court when the 2012 dissolution was entered").

Even when considered in totality, we are not convinced the various circumstances raised by Devon amounted to a substantial change of circumstances. While the parents had their difficulties, they managed to put their differences aside when the situation required it. We affirm the denial of Devon's petition to modify the dissolution decree.

Both parties seek an award of appellate attorney fees.  *See In re Marriage of Sullins*, 715 N.W.2d 242, 252 (Iowa 2006).  We conclude both should be responsible for their own fees.

**AFFIRMED.**