# IN THE COURT OF APPEALS OF IOWA

No. 23-1775
Filed September 4, 2024

IN RE THE MARRIAGE OF JOSHUA EUGENE DOW
AND ASHLEY LAINE DOW

Upon the Petition of
**JOSHUA EUGENE DOW,**
        Petitioner-Appellant,

**And Concerning**
**ASHLEY LAINE DOW, n/k/a ASHLEY LAINE HERZBERG,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Page County, Margaret Reyes,

Judge.


        A father appeals the district court's order modifying the physical-care

provisions of a dissolution decree.  **AFFIRMED.**


        Krisanne C. Weimer of Weimer Law, PC, Council Bluffs, for appellant.

        Kyle E. Focht of Focht Law Office, Council Bluffs, for appellee.


        Considered by Badding, P.J., Langholz, J., and Bower, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2024).

**LANGHOLZ, Judge.**

When Joshua Dow and Ashley Herzberg divorced in October 2019, the district court—following their stipulated agreement—granted them joint physical care of their two daughters, born in 2008 and 2012. Three years later, Herzberg filed a modification petition, requesting primary physical care of the children. She alleged that there has been a significant deterioration in the parties' communications and that their ability to co-parent has suffered.

The district court considered the pattern of communication between the parties since the decree and the toll that the parties' poor relationship had taken on the children. It found that Dow had blocked Herzberg's phone number, placed the burden of communication on the children, and punished the children for refusal to take a side in his conflicts with Herzberg. And so, the court found that Dow's failure to communicate with Herzberg was a substantial change in circumstances not contemplated at the time of the decree that warrants modification. It also held that placing the children in Herzberg's physical care was in the children's best interests given Herzberg's support of the children's relationship with Dow, his lack of support for the children's relationship with their mother, and his tendency to insert the children into parental conflict.

On our de novo review, giving the district court's factual findings the deference they deserve, we agree that there has been a substantial change in circumstances not contemplated at the time of the decree and that placing the children in Herzberg's physical care is in the children's best interests. We thus affirm the district court's decision. And we deny Dow's request for appellate attorney fees.

## I.      Physical Care

We review a district court's decision to modify the physical-care-provisions of a dissolution decree de novo.  *See In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016); Iowa R. App. P. 6.907.  Still, we give the district court's fact findings "weight and defer especially where the credibility of witnesses is a factor in the outcome."  *Hora v. Hora*, 5 N.W.3d 635, 645 (Iowa 2024) (cleaned up).  We do so "because the district court has front-row seat to the live testimony, viewing the demeanor of both the witness as she testifies and the parties while they listen, whereas our review is limited to reading black words on a white page of a sterile transcript."  *Id.*  And we recognize that this "greatly help[s]" the district court "in making a wise decision."  *In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984) (cleaned up).

A party seeking to modify a joint-physical-care provision to get primary physical care must first prove by a preponderance of the evidence that a substantial change in circumstances—more or less permanent, affecting the children's welfare, and not originally contemplated by the court—occurred after the decree was entered.  *See Harris*, 877 N.W.2d at 440.  Then, the party must show that he or she is "better suited than [the other parent] to minister to the needs of" the children.  *Id.* at 444; *see also Melchiori v. Kool*, 644 N.W.2d 365, 368–69 (Iowa Ct. App. 2002).  This is "a heavy burden, because once custody of a child has been fixed, it should be disturbed only for the most cogent reasons."  *Harris*, 877 N.W.2d at 440 (cleaned up).

Dow argues that no substantial change in circumstances has occurred and that modification is not in the children's best interests.  He claims that the frictions

between him and Herzberg are nothing new but reflect a continuation of their previously contentious relationship existing at the time of the decree. He also contends that he did not refuse to use a parenting application as stated by the district court in the modification order and that the court considered events that occurred before the dissolution decree in its modification order.

To start, we agree with the district court that Herzberg showed a substantial change in circumstances warranting modification. At the time of the decree, the parties were still capable of direct communication with each other and they shared information openly. Exhibits were introduced that demonstrated consistent and direct communication. One time, Dow told the children to "give your mom some slack" and apologized for not keeping the family together. Even nine months after the dissolution decree, Herzberg posted a picture of Dow hugging one of the children on Facebook, captioned in part, "This girl wanted her dad and to know he was there. So we made it happen. We may not like each other, agree with each other but we have 2 girls who need both of us." And Dow was present for a family picture in 2020 and the grand opening of Herzberg's new boutique shop.

But the nature of communication significantly declined as both parties moved on to new romantic relationships. Dow admitted that co-parenting "kind of went rocky" when he began seeing his current wife, Brandi, in 2021. Herzberg testified that she did not approve of Brandi moving in with Dow while she was still married to another man. Around that time, Dow began refusing direct communication with Herzberg. He blocked her phone number—preventing calls and texts—and from then on, the parties only communicated through the children or by email. This pattern of communication was reaffirmed in the mediated

parenting plan, which states that "[a]ll communication shall be by email unless it is an emergency." The parties' current inability to communicate severely departs from the nature of their communications just after the dissolution decree and could not have been contemplated at the time of the decree.

Nor could the court at the time of the decree contemplate that Dow would put the children in the middle of his communication warfare with Herzberg. Dow has required the children to communicate with Herzberg on his behalf. For example, in one group chat between Dow and his daughters about a scheduling mixup, he instructed them to tell Herzberg to "shut her fucking mouth." He rejected their requests to leave them out of it, writing to them, "I'll b[e] god dammed if I leave [you] out of it." He refused their pleading that he talk directly to Herzberg, responding "Hell, no I won't speak to that fucking bitch." And when Dow felt the children were taking Herzberg's side, he would threaten to cancel planned trips together, sell their horses, or otherwise retaliate against them.

Dow argues that by relying on this evidence, the district court penalized him for using profane language with the children but did not do the same for Herzberg. But the district court found—and we see no basis to disagree—that Herzberg is "not the perfect parent" and that she also uses profanity around the children. And while we do not condone Dow's choice of language with the children, his vulgar vocabulary is not the reason we—or the district court—find this evidence to support a substantial change of circumstances. Rather, it is because it shows, as the district court explained, that Dow now "unilaterally refuse[s] to communicate with Herzberg" and he "place[s] his children squarely in the middle of his conflicts with [Herzberg] by demanding that *they* confront [Herzberg]."

While some tension and discord is to be expected between divorcing parents, *see In re Marriage of Ellis*, 705 N.W.2d 96, 103 (Iowa Ct. App. 2005), when that discord "has a disruptive effect on the children's lives," it can be a substantial change in circumstances warranting modification of joint physical care. *Melchiori*, 644 N.W.2d at 368. This is particularly so when the parties show persistent "dysfunctional communication" with "no indication communication is likely to improve in the near term," which demonstrates they are "unwilling to maintain a relationship with civil communication that is a feature of a suitable joint physical care arrangement." *Harris*, 877 N.W.2d at 442. Wherever that precise line between acceptable tension and dysfunctional communciation lies, the communication here falls far beyond it. As the district court put it, "To say that these parties do not communicate or co-parent well is an understatement." Herzberg has shown a substantial change in circumstances since the decree that is more or less permanent, affecting the children's welfare, and not originally contemplated by the court.

Turning to the second step of the modification analysis, we also agree with the district court that placing the children in Herzberg's physical care—rather than continuing joint physical care—is in the children's best interests. Dow's willingness to put the children in the middle of his conflict with Herzberg and threaten them when they refuse to take his side weighs heavily in finding that placement with Herzberg rather than the current joint physical care will better serve the children's interests.

Dow's tendency to put the children in the middle of conflicts with Herzberg has placed great pressure on the girls. The children feel this burden, which has

created stress. Herzberg's mother also described an incident when Dow called her "irate, upset and yelling," demanding she come pick up the oldest daughter because, "I want her out of the house." She testified that she could hear the oldest daughter crying in the background during this phone call. She was so concerned about Dow's temper that she had her son come pick the daughter up since her son was closer and could get to the house faster.

As another example, in fall 2022, Dow dropped the children off at Herzberg's salon, so Herzberg requested that her mother pick them up. When Herzberg's mother arrived at the salon, she found that the oldest child had locked herself in the bathroom and refused to come out. The youngest child said that "Dad's mad at [the oldest child]" and she believed that she was also in trouble. She took the youngest child home and a friend of Herzberg's who was present that day testified that she "could hear her crying, sobbing, very much so" for nearly two hours. The oldest child said, "I just want everyone to get along and I don't want to be in trouble all the time."

There are also examples of times when Dow has reacted physically to situations that anger him. He admitted to "pushing" a hole through a bedroom door while arguing with the oldest child. Dow's father testified that Dow shoved him to the ground in 2021, and Herzberg testified that Dow has punched walls in anger in the past. And Herzberg's mother testified that Dow once squeezed the oldest daughter's arm so tightly while they were at a county fair that she considered reporting his conduct.

Dow contends it is improper to consider this last incident because it apparently occurred before the issuance of the decree. But Dow did not preserve

error on this issue because he did not object to the testimony when it was given or challenge the district court's reliance on it by filing a motion to reconsider the decree under Iowa Rule of Civil Procedure Rule 1.904. *See State v. Trane*, 984 N.W.2d 429, 435–36 (Iowa 2023). So we do not consider his argument further.

Unlike this worsening behavior by Dow, the court found—and we agree—that Herzberg has "worked to stabilize her life" and "to improve herself and communication with [Dow] since the divorce." One of the examples of Herzberg's attempts to improve communication was her suggestion to use a parenting application for communication but that use did not continue. Dow takes issue with the court's finding that he "refused to use" the application. But whether Dow unilaterally refused to use the app was immaterial to the district court's brief reference that Herzberg was trying to improve communication. And in any event, Dow does not dispute that there was evidence the application was only used for about a month.

Finally, the evidence showed that Herzberg is more likely to support the children's relationship with Dow than he is to support their relationship with her. Herzberg's mother testified that she supports Dow's relationship with the children. Her exhaustive testimony about specific events supports a finding that she was in regular contact with Dow, helped pick up the girls from events and visits, and maintains a close relationship with them. Dow testified that his family had posted "awful" things about Herzberg on Facebook, and Dow's father testified that he had left Herzberg a voicemail to call her a vulgar name. Dow's refusal to directly speak to Herzberg also supports such a finding.

In sum, we agree that Herzberg has met her heavy burden to show that modification of the decree is warranted to place the children in her physical care. We thus affirm the district court's modification order. Hopefully this modification will reduce the opportunity for harmful conflict between the parties. But it does not reduce the need for the parties and their families to learn how to coexist respectfully and support the children and the children's healthy relationships with both parents. As the district court aptly warned, "It is *imperative* that these parents find a way to put their personal animosities aside for the sake of their children."

## II.     Appellate Attorney Fees

In a dissolution modification proceeding, we "may award attorney fees to the prevailing party in an amount deemed reasonable." Iowa Code § 598.36 (2022). And in exercising that discretion, we consider "the parties' respective abilities to pay," the extent that the party prevailed, and whether the party had to defend the trial court's decision on appeal. *In re Marriage of Michael*, 839 N.W.2d 630, 639 (Iowa 2013). Dow requests that we exercise our discretion to award him appellate attorney fees if he prevails in this appeal. Because we affirm the district court's ruling, we deny Dow's request for appellate attorney fees.

**AFFIRMED.**