# IN THE COURT OF APPEALS OF IOWA

No. 24-1963
Filed July 23, 2025

JUSTIN PEACOCK,
　　　　Plaintiff-Appellant,

vs.

SHAWNA GOULD,
　　　　Defendant-Appellee.
_____

　　　　Appeal from the Iowa District Court for Polk County, Coleman McAllister, Judge.

　　　　A father appeals the denial of his petition to modify custody of his seven-year-old daughter. **AFFIRMED AND REMANDED.**

　　　　Delaney J. Kozlowski of Sease & Wadding, Des Moines, for appellant.

　　　　Jonathon P. Tarpey of Shindler, Anderson, Goplerud & Weese, P.C., West Des Moines, for appellee.

　　　　Considered without oral argument by Tabor, C.J., and Ahlers and Langholz, JJ.

**TABOR, Chief Judge.**

Justin Peacock and Shawna Gould are the parents of E.B.G.-P., who is seven years old. When she was an infant, the parents agreed to joint legal custody, with Shawna having physical care. But after years of discord, Justin sought sole legal custody and physical care. The district court denied his petition, finding no material and substantial change in circumstances to justify modification. Justin appeals, contending the level of animosity between the parents was not contemplated when the decree was modified in 2021. Because Justin did not show that the persistent parental conflicts marked a substantial change in circumstances, we affirm the district court's refusal to modify the decree. We remand for further proceedings to determine appropriate appellate attorney fees for Shawna's defense of the custody decree.

## I.     Facts and Prior Proceedings

Justin and Shawna were never married. They share one child, E.B.G.-P., born in November 2017. In 2018, the court entered a stipulated decree that provided joint legal custody for the parents. Shawna was given physical care with Justin having liberal visitation rights.

But the parents did not work well together. One year later, in October 2019, Justin petitioned to modify the decree, requesting physical care or joint physical care. He based his requests on Shawna's inability to communicate, her refusal to support his relationship with E.B.G.-P., and her failure to make up his missed visitation hours. Before Justin sought modification, he and Shawna both accused the other of contempt, clashing over pick-up and drop-off times and visitation hours.

Two years later, in 2021, the district court found that there had not been "a material and substantial change in circumstances necessitating a modification of the custody provisions of the original Decree," and it was in the child's best interests to remain in Shawna's physical care.[1]  But the court modified the decree to increase Justin's visitation time.  Currently, the arrangement gives Justin five overnights with E.B.G.-P. within a fourteen-day period.  Less than a year after that visitation modification, both parties filed more contempt actions against the other—alleging abuse, failure to adequately care for the child, missed visitation time, and the impossibility of joint decision making.  The court found Shawna in contempt for failing to accommodate make-up visitation for time that Justin missed because of his military service.

Justin filed his second request for modification in 2023.  This time, he asked for sole legal custody and physical care.  To justify his request, Justin asserted that Shawna's communications had become more aggressive and that her eighteen contempt violations showed they were unable to co-parent in the best interests of their child.

The district court denied modification, reasoning, "[s]imply put, nothing has changed since the time the current custodial order was put in place.  The parties remain as divided and their relationship as fractured as it has been throughout the course of [E.B.G-P's] life."  Justin appeals that denial.

---

[1] The court was "troubled by the impact this ongoing litigation and the conflict between the parents" had on E.B.G.-P., who was attending therapy at that time. The court also believed that both parents were at fault for the high "degree of acrimony."  But neither party requested sole legal custody.  The court noted: "if either party were making such a request, the Court would be reluctant to grant it as it would be rewarding that party."

## II.     Scope and Standard of Review

We review rulings on modifications of custody decrees de novo.  Iowa R. App. P. 6.907; *In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016).  We apply the same legal framework to custody and visitation matters involving parents who were never married as we do to those matters when the parents had been married.  *See* Iowa Code § 600B.40(2) (2023) (cross-referencing section 598.41).  "We examine the entire record and adjudicate anew rights on the issues properly presented." *In re Marriage of Beecher*, 582 N.W.2d 510, 512–13 (Iowa 1998).  "We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but are not bound by them." *Id.* at 513.

## III.     Discussion

## A.     No Substantial Change in Circumstances

In this appeal, Justin asserts that Shawna's eighteen contempt violations show a material change in circumstances warranting modification of the custody arrangement.  He contends that Shawna has become more difficult to communicate with, refuses to engage in a meaningful co-parent relationship, fails to consult him on medical decisions, and does not support his relationship with E.B.G.-P.

In seeking to modify legal custody and physical care, Justin has a heavy burden to show those changes would be in the best interests of the child. *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015).  "[O]nce custody of children has been fixed it should be disturbed only for the most cogent reasons." *Id.* (quoting *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983)).

To meet the modification threshold, Justin must show by a preponderance of the evidence that conditions have so materially and substantially changed that E.B.G.-P.'s best interests make the modification advisable. *See id*. We measure the change from the last modification hearing. *In re Marriage of Ihns*, 09-1149, 2010 WL 624260, at *1 (Iowa Ct. App. Feb. 24, 2010). The changed circumstances must not have been contemplated by the court when the modification was entered and must be more-or-less permanent. *See Hoffman*, 867 N.W.2d at 32. The changed circumstances must also relate to the child's welfare. *Id*. After meeting that threshold test, a parent seeking to take custody from the other must prove an ability to minister more effectively to the child's well-being. *Id*.

True, when deciding if modification is appropriate, we examine the relationship between the parents and their ability to communicate and foster positive relations between the other parent and the child. *See Melchiori v. Kooi*, 644 N.W.2d 365, 368 (Iowa Ct. App. 2002) ("Discord between parents that has a disruptive effect on children's lives has been held to be a substantial change of circumstance that warrants a modification of the decree . . . ."). But the tumultuous relationship between these parents is nothing new. In fact, the strife has remained constant throughout E.B.G.-P.'s life. As the district court calculated, less than one year of E.B.G.-P.'s seven years was free of parental conflict.

It is an understatement to say the parties have a difficult time co-parenting. Both parents assert that the other fails to consider their concerns about the child when making decisions. It is not the unilateral actions of one parent that continually leads them to court, but refusals by both parents to work in E.B.G.-P.'s best

interests. They continually accuse each other of wrongdoing without corroboration. It is a dysfunctional cycle that is repeated by both parties.

Fortunately, E.B.G.-P. has risen above her parents' negative relationship. The record shows that she loves both parents and benefits by spending consistent time with each of them. In its denial of modification, the district court found, "Thankfully, at the time of trial, there does not appear to be any current need for [E.B.G.-P.] to be involved in any further therapeutic services." *See In re Marriage of Dauterive*, No. 18-0381, 2019 WL 1056816, at *3 (Iowa Ct. App. Mar. 6, 2019) (finding parents' disagreements did not warrant modification when child's "well-being was [not] imperiled by the acrimony"). This record also suggests that circumstances may be positively progressing. At the modification hearing in October 2024, Justin testified that since the court held Shawna in contempt in the winter of 2023, she had not withheld his visitation with E.B.G.-P.

In our de novo review of the record, we cannot say that Justin has shown a material and substantial change in circumstances since the 2021 modified decree. Both parties have failed to communicate effectively, and neither has been willing to work toward a more amicable relationship. But their difficulty in co-parenting does not constitute a material change warranting modification. And disrupting E.B.G.-P.'s routine because the parties still cannot communicate does not serve her best interests. Shawna has had physical care of E.B.G.-P. her entire life; we see no reason to disturb that now. Like the district court, we hope that going forward, "these parents have the good sense and sound judgment to mutually commit to modifying their behavior so as to avoid any further damage to their child."

Because we find there has been no material or substantial change in circumstances, we need not evaluate which party has the superior parenting skills. We affirm the district court's refusal to modify the decree.

### B.     Appellate Attorney Fees

Shawna requests appellate attorney fees. In modification proceedings, the court can award reasonable attorney fees to the prevailing party. *See* Iowa Code § 600B.26. In determining whether to award appellate attorney fees, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the district court's decision on appeal. *Hensch v. Mysak*, 902 N.W.2d 822, 827 (Iowa Ct. App. 2017). After considering those factors, we find that an award of appellate attorney fees is appropriate. Because Shawna did not file an attorney-fee affidavit, we remand for the district court to determine the reasonable amount of appellate attorney fees to award. *See In re Marriage of Samuels*, 15 N.W.3d 801, 808–09 (Iowa Ct. App. 2024) (expressing our preference that parties requesting appellate fees do so in their briefs and submit an attorney-fee affidavit after the case is submitted).

**AFFIRMED AND REMANDED.**