## IN THE COURT OF APPEALS OF IOWA

No. 17-1691
Filed May 2, 2018

IN RE THE MARRIAGE OF KATIE LYNN LANG
AND JEFFREY JOSEPH LANG

Upon the Petition of
**KATIE LYNN LANG,**
        Petitioner-Appellant,

**And Concerning**
**JEFFREY JOSEPH LANG,**
        Respondent-Appellee.

_____

        Appeal from the Iowa District Court for Dubuque County, Thomas A. Bitter,

Judge.


        Katie Lang appeals a district court order modifying the physical-care

provision of a decree of dissolution of marriage.  **AFFIRMED.**


        Myia E. Steines of Clemens, Walters, Conlon, Runde & Hiatt, L.L.P.,

Dubuque, for appellant.

        Kim C. Roddick of Reynolds & Kenline, L.L.P., Dubuque, for appellee.


        Heard by Danilson, C.J., and Mullins and McDonald, JJ.

**MULLINS, Judge.**

Katie Lang appeals a district court order modifying the physical-care provision of the decree dissolving her marriage to Jeffrey (Jeff) Lang, arguing the court should have modified the decree to place the child in her, rather than Jeff's, physical care. Katie also challenges the corresponding modification of her child-support obligation and the visitation schedule imposed. Jeff requests an award of appellate attorney fees.

## I.     Background Facts and Proceedings

The parties were married in 2003. The marriage produced one child, born in 2006. The marriage was dissolved by decree in 2012. The parties were granted joint legal custody and joint physical care of the child. The decree provided the parties substantially equal parenting time. At the time of the entry of the decree, both parties resided in the Dubuque, Iowa area.

In late October 2016, Katie met Josh Malli "online," and the two began dating. At this time, Josh lived in Cresco, Iowa. Katie introduced Josh to her daughter in early December. At some point in the spring of 2017, Katie advised Jeff of her aspirations of moving away from the Dubuque area and having the child move with her. Jeff opposed the potential move. In April, Katie filed a petition to modify the decree, stating she would "be relocating to Northwood, Iowa in the near future due to a change in employment" and requested the court to modify the physical-care provision of the decree. Both parties requested they be awarded physical care of the child.

In May, Katie and Josh purchased a three-bedroom, two-bathroom home in Northwood.[1]  Northwood is located approximately three hours away from the Dubuque area.  Katie characterized Northwood as "a small, little northern Iowa town."  Josh's nine-year-old son will also be living in the home.  According to Katie, her daughter gets along "very well" with Josh and his son.  The home has individual bedrooms for each of the children, and is located "[l]ess than ten blocks" away from the local elementary school.  Katie's grandmother, parents, and sister all continue to live in the Dubuque area.  Jeff also has family living in the Dubuque area.  Katie has "two very close family friends" living a "town over" from Northwood, "[a]s well as numerous other people that [she] know[s]."

Katie began working at the Diamond Jo casino in Dubuque in 1998.  She worked her way up to the position of food and beverage operations manager, a position in which she earned $56,000.00 annually.  Katie accepted a marketing coordinator position in another Diamond Jo casino located in Northwood, effective June 15, 2017.  She is paid $16.50 per hour, or roughly $34,320 per year, in this position.  The change in employment therefore resulted in a pay cut for Katie in excess of $20,000.00.  In her new position, Katie generally has a regular nine-to-five, Monday-through-Friday work schedule.  Katie characterized her new position as less stressful and having more potential opportunities for advancement.

Jeff has lived with his mother and stepfather since the parties' separation in 2011. The record indicates Jeff's mother and stepfather have some health issues,

---

[1] Katie and Josh did some remodeling to the home, and planned to move in the day following the modification trial in July.  However, the record indicates Katie had moved away from the Dubuque area prior to the time of the trial.

and Jeff provides them assistance in relation to their conditions and helps to maintain the home. The home has three bedrooms, and Jeff and the child each have their own room. Jeff has worked for the same employer, a popular bar and grill restaurant chain, for sixteen years. He currently holds the position of head line cook. His work schedule fluctuates, but he typically works every day of the week except Saturday. The start time of his shifts varies between 8:00 and 10:00 a.m., but his shifts end at 4:00 p.m. Jeff is allowed great flexibility in his work schedule to accommodate any parenting obligations that may arise. Jeff earns $14.25 per hour, works thirty-six to forty hours per week, and occasionally receives overtime.

The child was ten years old at the time of trial. She does very well in school. According to the evidence presented, the school the child attends in the Dubuque area is ranked 82nd out of Iowa's 597 elementary schools, while the Northwood school Katie desires the child to attend is ranked 265th. The child has been diagnosed with ADHD and has seen the same doctor in the Dubuque area regarding her ADHD for several years. Katie has traditionally been responsible for the child's ADHD medication management and taking the child to the doctor or dentist in general. This is not to say that Jeff is uninvolved in these matters, as Katie schedules these appointments on her days off, when Jeff is working, and Jeff steps in to take the child to appointments when Katie is unavailable. Both parents are involved in the child's schooling. Both of the parents are involved with the child's extracurricular activities, but Katie more so because she schedules those activities during her parenting time.

Jeff and Katie have done an exemplary job in co-parenting this child, and we commend them both for their efforts. Jeff and Katie have never had any

significant problems with communicating with one another about the child. Jeff and Katie have also been able to accommodate one another in relation to altering the parenting-time schedule upon the request of the other parent. Both parents are respectful of the other's relationship with the child and allow the child to call the other parent when the child is away from that parent. Up until the time Katie got a new boyfriend, Katie, Jeff, and the child continued to occasionally do family activities together such as go out to eat or get ice cream. We repeat the district court's commendation to these parents that "the court could not be happier with the way these parties have parented their child and acted toward each other." Generally speaking, each of the parties agree the other is a good parent. The child has a good relationship with both parents.

Following a modification trial, the district court awarded physical care of the child to Jeff. In doing so, the court noted "[t]he physical care determination is a very difficult decision in this case," as the court was "impressed with both parents" and was confident that either would serve as an outstanding physical caregiver to the child. The court reasoned "the child would be best served by living in the town where she has lived her entire life, attending the same (superior) school, continuing relationships with the same friends, seeing the same doctor, and being near essentially all of her relatives."

Katie filed a motion to reconsider in which she requested the court to award her physical care of the child or, alternatively, to modify its ruling in a number of other respects. The court declined to reconsider the physical-care issue, but modified its prior ruling in relation to exchanges of the child and holiday visitation.

As noted, Katie appeals.

## II.    Standard of Review

Actions to modify the physical-care provisions of a decree of dissolution of marriage are equitable proceedings, which we review de novo.  Iowa R. App. P. 6.907; *In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016).  We give weight to the factual findings of the district court, especially when considering the credibility of witnesses, but we are not bound by them.  Iowa R. App. P. 6.904(3)(g).

## III.    Discussion

Modification requires the existence of a substantial change in circumstances not contemplated by the court at the time of the original decree. *Harris*, 877 N.W.2d at 440.  The parties agree Katie's relocation amounts to a substantial change in circumstances rendering modification of the physical-care arrangement appropriate.  Therefore, the physical-care determination turns on which parent has a superior ability to minister to the needs of the child and what is in the child's best interests.  *See id.*  Our primary consideration is the long-term best interests of the child.  *See In re Marriage of Kleist*, 538 N.W.2d 273, 276 (Iowa 1995).  "Prior cases are of little precedential value, except to provide a framework for our analysis, and we must ultimately tailor our decision to the unique facts and circumstances before us."  *Id.*

Katie argues it would be in the child's best interests to be placed in her physical care.  She contends she can provide better structure and stability for the child; can more effectively discipline the child; is more able to financially support the child; and has traditionally been responsible for ministering to the child's medical and dental needs, as well as her schooling.

The criteria for determining child custody are applied in both dissolution and modification proceedings. *See In re Marriage of Hubbard*, 315 N.W.2d 75, 80 (Iowa 1982); *In re Marriage of Courtade*, 560 N.W.2d 36, 37 (Iowa Ct. App. 1996). "The factors the court considers in awarding custody are enumerated in Iowa Code section 598.41(3)" (2017). *Courtade*, 560 N.W.2d at 37. "In determining which parent serves the child's best interests, the objective is to place the child in an environment most likely to bring the child to healthy physical, mental, and social maturity." *Id.* at 38. The following factors are relevant to the best-interests determination in this case:

> a. Whether each parent would be a suitable custodian for the child.
> b. Whether the psychological and emotional needs and development of the child will suffer due to lack of active contact with and attention from both parents.
> c. Whether the parents can communicate with each other regarding the child's needs.
> d. Whether both parents have actively cared for the child before and since the separation.
> e. Whether each parent can support the other parent's relationship with the child.
> f. Whether the custody arrangement is in accord with the child's wishes or whether the child has strong opposition, taking into consideration the child's age and maturity.

Iowa Code § 598.41(3)(a)–(f). Upon our de novo review, we agree with the district court that both Jeff and Katie are suitable custodians for this child. *See id.* § 598.41(3)(a). Regardless of which parent is granted physical care, the child will suffer from decreased contact with the other parent. *See id.* § 598.41(3)(b). Both parents have done an exemplary job in communicating with the other, actively caring for the child, and supporting the other parent's relationship with the child. *See id.* § 598.41(3)(c)–(e). As the district court recognized in its statement to the parties at the close of the modification trial, the parties have done a good job in not

putting the child on the spot and forcing her to choose which parent she would prefer to live with. The testimony by other witnesses seems to indicate that the child is torn on the matter. *See id.* § 598.41(3)(f).

As the district court recognized, this is a difficult case in which the physical-care determination is a close call. The district court expressed the following on the record to the parents at the close of evidence:

> I'm going to tell you this is going to be a terrible decision for me to make, an incredibly hard decision to make, and most of the custody cases that I hear I could tell you when I walk out of the courtroom at the very end of it for the most part what I'm going to do with custody, and today I want time to think about it and think about your situation. I can't tell you what I'm going to do. And this is a more difficult decision than the vast majority of custody cases that I have to hear. It really is. And I've had cases before where it's a difficult decision because I have two terrible parents, to be honest with you, and I know that I have to place the child with one of them, and this isn't that way. This is two good parents who've really done all the right things for their daughter.

In its subsequent ruling, the court stated:

> Absent any changes, if the court was forced to choose a physical care provider, the court would choose Katie—but not by much. The court is entirely confident in Jeffrey's ability to parent the child. The proposed changes are significant. The child would move to a new town where she wouldn't know anyone. She would move away from all of her friends and relatives. She would attend a lower-rated school. She would start seeing a new doctor for her ADHD issues. And although the court has no reason to impugn Josh Malli, the relationship has developed and progressed very quickly. Katie just met him in October. They apparently started discussing living together within a few months. They have purchased a home together, despite not being married or engaged. If the relationship were to fail, Katie's living arrangements would change, and she might regret taking a significant pay cut and moving three hours away. Josh's nine-year-old son lives with him, and the blended family situation could be a difficult adjustment for Katie, Josh, or the two children.
> The physical care determination is a very difficult decision in this case. The court has been impressed with both parents. Both have continually provided very good care for their daughter, and

there is every indication that both parties will continue to be mature and cooperative. Faced with the two choices, the court is confident that the child would be best served by living in the town where she has lived her entire life, attending the same (superior) school, continuing relationships with the same friends, seeing the same doctor, and being near essentially all of her relatives.

The court determined that, absent Katie's relocation and if it were forced to choose between the parents, the child's best interests would be served by placing her in Katie's physical care. However, in considering Katie's relocation, the court ultimately determined the stability of keeping the child in the Dubuque area is in the child's best interests and tipped the balance in favor of placing the child with Jeff. Upon our de novo review of the record, we agree with the district court's assessment. *Cf. In re Marriage of Allen*, No. 15-1100, 2016 WL 1133835, at *2 (Iowa Ct. App. Mar. 23, 2016). We note it is important to avoid disruption in the child's life unless mandated by the circumstances. *See Stouwie v. Stouwie*, 222 N.W.2d 435, 438 (Iowa 1974). Here, we cannot conclude the circumstances mandate uprooting this child from the area in which she has lived her entire life, thus geographically separating her from most of her family, her friends, her school, her medical providers, and the atmosphere she has become accustomed to in general. Under these circumstances, we find the best interests of the child can best be met by placing physical care with Jeff, as he will be providing care in the "environment most likely to bring the child to healthy physical, mental, and social maturity." *Courtade*, 560 N.W.2d at 38; *cf. In re Marriage of Snowden*, No. 14-1920, 2015 WL 4233449, at *2– (Iowa Ct. App. July 9, 2015) (affirming placement of physical care with father after mother's geographic move rendered continued joint-physical-care arrangement unfeasible in a "close case" in which "[m]any of

the factors relevant to the physical care decision [were] in relative equipoise", because placing children with father minimized disruption in children's lives.).

We therefore affirm the district court's decision to place the child in Jeff's physical care. Because we affirm on the issue of physical care, we also affirm on the issue of child support, as Katie only challenges her child-support obligation on the contention that she should have been awarded physical care.

Katie additionally complains the district court imposed a "vague and ambiguous visitation" schedule and specifically requests this court to modify the visitation schedule to provide she "shall have visitation time with the child at a minimum of two (2) weekends per month. Said weekends shall include any extended weekends which may fall in that month." The modification order provided Katie with visitation time "every other weekend" and encouraged the parties to use holiday and other longer weekends as visitation weekends to maximize Katie's visitation. We find the court's visitation schedule no more "vague and ambiguous" than Katie's requested schedule. Furthermore, based on the parties' past co-parenting performance, we are satisfied they will heed the district court's encouragement and be able to work together to maximize Katie's visitation. For these reasons, we decline to entertain Katie's request for appellate modification of the visitation schedule.

Finally, Jeff requests an award of appellate attorney fees. *See* Iowa Code § 598.36; *Schaffer v. Frank Moyer Constr. Inc.*, 628 N.W.2d 11, 23 (Iowa 2001) (holding that a statute allowing an award of trial attorney fees permits an award of appellate attorney fees as well). An award of appellate attorney fees is not a matter of right but rests within this court's discretion. *In re Marriage of Berning*, 745

N.W.2d 90, 94 (Iowa Ct. App. 2007). In determining whether to award attorney fees, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the district court's decision on appeal. *Id.* In consideration of these factors, we decline to award appellate attorney fees to Jeff. Costs on appeal are assessed to Katie.

## IV. Conclusion

We affirm the district court's modification ruling in its entirety. We decline to award appellate attorney fees to Jeff. Costs on appeal are assessed to Katie.

**AFFIRMED.**