# IN THE COURT OF APPEALS OF IOWA

No. 18-1410
Filed July 24, 2019

IN RE THE MARRIAGE OF RENEE EPARI
AND ALOK EPARI

Upon the Petition of
**RENEE EPARI, n/k/a RENEE NELSON,**
        Petitioner-Appellee,

**And Concerning
ALOK EPARI,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Dallas County, Randy V. Hefner,

Judge.

        A father appeals the modification of the physical care and visitation

provisions in a dissolution decree. **AFFIRMED AS MODIFIED.**

        Jeremy B.A. Feitelson of Feitelson Law, L.L.C., West Des Moines, for

appellant.

        Mark R. Hinshaw of The Law Offices of Mark R. Hinshaw, West Des Moines,

for appellee.

        Considered by Tabor, P.J., and Mullins and Bower, JJ.

**BOWER, Judge.**

Alok Epari appeals the district court's order modifying the physical care and visitation provisions of the decree dissolving his marriage with Renee Nelson, formerly Renee Epari. We affirm the district court ruling granting Renee physical care of the children, and affirm as modified the visitation schedule.

## I. Background Facts & Proceedings

Alok and Renee's marriage was dissolved in 2014. In a stipulation and agreement incorporated into the dissolution decree, the parties were granted joint legal custody and joint physical care of their two children, N.E. and P.E. The parties agreed Alok would pay Renee $1500 per month in child support, which was above the guideline amount, and Renee waived spousal support and attorney fees.

Following the dissolution, the parents frequently fought via text messages and had a generally unhealthy relationship with each other. Alok contacted persons in Renee's life, sending pictures and making allegations of Renee's history with the aim of harming her familial relationships and destroying romantic relationships. In 2015, Renee filed a contempt action against Alok, alleging he violated the provisions of the decree relating to child care, communication with the children, and joint decision-making, and also alleging he had underpaid child support and shared expenses. Renee dismissed the application in January 2016.

In June 2016, Alok discovered financial problems with his company in India. Over three trips, he spent four of the next six months in India. He was again in India from early January 2017 until the end of June. At trial, he testified he will continue to need to travel to India for his business and stated he intends to travel in three-week increments to minimize lost visitation.

On December 15, 2016, Renee filed a petition to modify the dissolution decree provisions relating to custody, physical care, and child support. On July 19, 2017, she filed an application for contempt alleging Alok willfully failed to pay child support, child-related expenses, and the property-settlement equalization payments.

Following a hearing on June 14, 2018, the district court modified the dissolution decree granting Renee physical care of the children and providing Alok liberal visitation rights. The court maintained joint legal custody, approved a visitation schedule, and modified the consent restrictions on out-of-country travel with the children. The court reduced Alok's child support obligation based on a lower earning capacity for Alok and a higher income level for Renee. The court dismissed Renee's contempt application as payments were made since the time of the application. Finally, the court ordered Alok to pay $4000 of Renee's attorney fees.

Alok appeals, requesting the reinstatement of joint physical care. Alok also requests his visitation be changed as provided in the 2014 dissolution decree.

## II. Standard of Review

An action to modify a dissolution decree is an equitable proceeding, so our review is de novo. Iowa R. App. P. 6.907; *In re Marriage of Brown*, 778 N.W.2d 47, 50 (Iowa Ct. App. 2009). We examine the record and adjudicate the rights of the parties anew. *In re Marriage of Williams*, 589 N.W.2d 759, 761 (Iowa Ct. App. 1998). Because the district court is in a unique position to hear the evidence, we defer to the district court's determinations of credibility. *In re Marriage of Brown*, 487 N.W.2d 331, 332 (Iowa 1992). While our review is de novo, the district court

is given latitude to make determinations, which we will disturb only if equity has not been done. *In re Marriage of Okland*, 699 N.W.2d 260, 263 (Iowa 2005).

### III. Analysis

**A.    Physical Care.** "'Physical care' means the right and responsibility to maintain a home for the minor child and provide for the routine care of the child." Iowa Code § 598.1(7) (2016).   Under a joint physical care arrangement, both parents have the rights and responsibilities of physical care and neither parent has physical care rights superior to the other parent. *Id.* § 598.1(4).   When joint physical care is not warranted, the court chooses one parent to be the primary caretaker, who has the "sole right to make decisions concerning the child's routine care." *In re Marriage of Hynick*, 727 N.W.2d 575, 579 (Iowa 2007).   "[T]he main distinction between joint physical care and primary physical care with liberal visitation rights is the joint decision making on routine matters required when parents share physical care." *Id.* at 580.

A former spouse seeking to modify a joint physical care arrangement must prove a substantial change in circumstances since the decree was entered justifying the modification. *In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016).   We may consider modification when the shared physical care provisions "have not evolved as envisioned." *Id.* at 441.   An "important factor to consider in determining whether joint physical care is in the child's best interest is the ability of the spouses to communicate and show mutual respect." *In re Marriage of Hansen*, 733 N.W.2d 683, 698 (Iowa 2007).

Of particular concern for the court in this case was Alok's need to spend significant periods of time out of the country for business.   The court noted Renee

had "assumed de facto the role of primary physical care parent." The shared decision-making on routine matters required under joint physical care arrangements is significantly impeded when one party is frequently absent and communication is difficult between the parents. *See Hynick*, 727 N.W.2d at 579 ("Joint physical care anticipates that parents will have equal, or roughly equal, residential time with the child."). We find Alok's substantial absence from summer 2016 to summer 2017 with necessary continuing travel constitutes a substantial change in circumstances since the entry of the decree.

Although the parents testified their communication had improved somewhat since the initial problems following the dissolution, continuing issues were apparent from their conflicting testimony. Considering Alok's continuing need to travel for extended periods to maintain his business and the history of acrimonious communications between the parents, a joint physical care arrangement is not in the best interests of the children. Renee is placed in a superior situation to provide a stable home and consistent, routine care for the children. We affirm the court's modification of the physical care provisions.

**B.     Visitation.** After granting Renee physical care of the children, the court specified Alok was entitled to "reasonable and liberal visitation." The court found the visitation schedule Renee proposed was sufficient, but encouraged the parents to cooperate to provide additional time with the children. Alok seeks to reinstate the 2014 decree visitation schedule. Renee makes no argument or comment as to the modified visitation schedule, her arguments focused only on the joint physical care question.

The 2014 decree provided Alok visitation six days out of every fourteen days, with one five-day span over a weekend and one day the alternating week. When ruling at trial, the court specified Alok would have the children overnight every Thursday and alternating weekends, having them Thursday through Monday morning on his weekends—this ruling only shortened his visitation by one night per two-week period. The court's written ruling did not conform with the court's oral statement at the end of the trial, instead granting Alok four hours every Thursday from 3:00 to 7:00, and alternating weekends from Thursday at 3:00 until Sunday at 5:00—cutting Alok's visitation in half. The written ruling indicated it was meant to summarize "partial findings of fact and ruling pertaining to the child custody issues" as dictated at the close of evidence.

The change in circumstances caused by Alok's increased need to travel for work justified the change in physical care under the decree in order to allow Renee to make necessary routine decisions for the children. Immediately after listening to the parents' arguments, the court found the appropriate visitation schedule to maintain the children's relationship with their father to include overnights every Thursday and every other week "Thursday until Monday morning" and acknowledging that the older child's desires as to visitation might affect that schedule. We modify the visitation schedule to coincide with the court's decree from the bench. Otherwise, we find the original visitation schedule reasonable.

**C.    Appellate Attorney Fees.**  Renee requests an award of appellate attorney fees. An award of appellate attorney fees is not a matter of right, but rests within the court's discretion. *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). We consider "the needs of the party seeking the award, the ability of the

other party to pay, and the relative merits of the appeal." *Id.* (citation omitted). Renee has not submitted an affidavit showing her attorney fees. Having considered the appropriate factors and the circumstances of this case, we decline to grant Renee appellate attorney fees.

**AFFIRMED AS MODIFIED.**