# IN THE COURT OF APPEALS OF IOWA

No. 20-1286
Filed May 12, 2021

IN RE THE MARRIAGE OF NICHOLAS SAN NICOLAS LAW
AND NACRINA SAN NICOLAS LAW

Upon the Petition of
NICHOLAS A. SAN NICOLAS LAW, n/k/a NICHOLAS ADAM LAW,
        Petitioner-Appellee,

And Concerning
NACRINA SAN NICOLAS LAW, n/k/a NACRINA SAN NICOLAS TIGRETT,
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Muscatine County, Thomas G.

Reidel, Judge.


        Nacrina San Nicolas Tigrett appeals the physical care and visitation

provisions of a modification order.  **AFFIRMED.**



        Laura J. Lemos of John C. Wagner Law Offices, P.C., Amana, for appellant.

        Alexander S. Momany of Howes Law Firm, P.C., Cedar Rapids, for

appellee.



        Considered by Bower, C.J., and Tabor and Ahlers, JJ.

**BOWER, Chief Judge.**

Nacrina San Nicolas Tigrett appeals the physical care and visitation provisions of a custody modification order. Nacrina asserts the court should have awarded her physical care of the children with Nicholas (Nick) Law. In the alternative, she seeks a change to allow her a midweek overnight visit. We affirm.

**I. Background Facts & Proceedings**

Nacrina and Nick were married from 2012 until February 4, 2019. In their marriage dissolution, the parties stipulated to joint legal custody and joint physical care of the couple's two minor children, born in 2013 and 2015. The children alternated weeks between Nacrina and Nick's care.

Nacrina started her present employment as a loan processor shortly before the trial and had worked in temporary positions prior. Nacrina is able to work from home full time. She has both an undergraduate and graduate degree and had planned further schooling but recently changed her plans. Nacrina owns her own home. Nacrina remarried shortly after she and Nick divorced.[1] This second marriage was highly volatile and marked by many incidents of domestic violence including threats of death and serious injury. Police intervention was necessary on several occasions.[2] Some of the domestic abuse occurred in front of the children. Nacrina and her husband both violated a no-contact order many times, also requiring police intervention with the children present. Nacrina states she has

---

[1] Nacrina's second husband began residing with her and the children in mid-2018.
[2] The record includes many police incident reports and videos between Nacrina and her second husband during the period after he moved out. Nacrina testified she did not remember most of the incidents.

filed for divorce from her second husband, but they remain friends and were entering into a business venture at the time of the modification hearing.

Nick is a teacher and military veteran. He has a college degree and is pursuing a graduate degree. Nick was honorably retired from the military in 2016 due to a disability, though his condition has since stabilized and he needs no on-going treatment. He owns his current home; his parents live with him, and his mother helps with childcare while Nick is working.

The marriage between Nick and Nacrina was marked with violence, mental-health issues,[3] physical disability, blame, and childish behavior. The acrimony between Nacrina and Nick continued after the dissolution. As the district court observed,

> Each party has made multiple reports to [the department of human services (DHS)] alleging abuse by the other. Allegations were also made against [family members of each parent]. All allegations have been unfounded. It is likely that the parties are causing harm to the children by their repeated false allegations against the other.

As a result of the acrimony, the court entered an injunction in August 2019 limiting Nick and Nacrina to communicating only about the children in a written format, specifying drop-off procedures, and otherwise enjoining them from being in each other's presence or around the other's residence. The reports to DHS of abuse allegations continued however, including another unfounded report by Nacrina two weeks before the custody modification hearing.

---

[3] Both Nacrina and Nick have a history of mental-health issues for which each sought treatment.

In February 2020, Nick filed a petition to modify, seeking sole legal custody and physical care of the children. He also filed an application for an injunction to prevent Nacrina from moving out of state with the children.[4] The court granted the injunction. In March, Nacrina filed her answer, also seeking sole legal custody and physical care. Both Nick and Nacrina asserted a substantial change in circumstances had occurred since the February 2019 decree meriting a modification of the custody order. Each claimed to be able to provide superior care for the children.

The district court determined the extreme dysfunction displayed by both parties and the lack of co-parenting warranted a change in physical care of the children. The court noted, "Both parties take actions that are designed to assist them in a custody case rather than foster good relationships that nurture the best interests of the children." The court found while each party had their strengths, Nick was better able to care for the children based on his stability and support system.

The court expressed concern for the effect on the children of Nacrina's abusive relationship with her husband. In particular, the court found "Nacrina's downplaying of [a severe domestic-abuse] incident is alarming and casts a dark shadow over her credibility." The court further observed, "Nacrina's refusal to acknowledge the abuse in her marriage and its impact on [the children] is

---

[4] The stipulated dissolution decree included a provision contemplating Nacrina and the children would relocate in June 2020 so she could attend graduate school and Nick would move within twenty-five miles of the city where the graduate program was located. Nacrina did not enroll in a graduate program in 2020.

concerning. It creates distrust in the co-parenting relationship and leads to concern regarding her ability to truly protect the children's best interest."

The court awarded Nick physical care of the children but maintained joint legal custody. The court set Nacrina's visitation during the school year for alternating weekends from Friday night to Monday. Neither party disputes the legal custody determination.

Nacrina appeals, seeking physical care of the children or, in the alternative, additional midweek overnight school-year visitation.[5]

## II. Standard of Review

An action to modify a dissolution decree is an equitable proceeding, so our review is de novo. Iowa R. App. P. 6.907; *In re Marriage of Brown*, 778 N.W.2d 47, 50 (Iowa Ct. App. 2009). We examine the record and adjudicate the rights of the parties anew. *In re Marriage of Williams*, 589 N.W.2d 759, 761 (Iowa Ct. App. 1998). "Although we make our own findings of fact, 'when considering the credibility of witnesses the court gives weight to the findings of the trial court' even though we are not bound by them. *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015) (citation omitted).

## III. Analysis

A former spouse seeking to modify a joint physical care arrangement must prove a substantial change in circumstances since the decree was entered justifying the modification. *In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016). We agree with the district court that the level of hostility and unwillingness

---

[5] The remaining modifications to the decree are not disputed and will not be discussed.

to co-parent displayed by both parties since the decree constitutes a substantial change of circumstances not contemplated at the time of the decree, justifying a modification of the shared physical care arrangement. *See id.* at 441 (noting discord between parents that disrupts the children's lives can constitute a substantial change of circumstances for purposes of a physical care modification).

Finding a modification from joint physical care is warranted, each parent asserts they are the better parent to care for the children.

> Physical care issues are not to be resolved based upon perceived fairness to the *spouses*, but primarily upon what is best for the *child*. The objective of a physical care determination is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity.

*In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). We consider the factors listed in Iowa Code section 598.41(3) (2020) and other relevant facts and circumstances in determining the best physical care arrangement for the children. *Id.* at 696. "[S]tability and continuity of caregiving have traditionally been primary factors" in physical care decisions. *Id.*

Nacrina asserts it would be in the children's best interests to be placed in her physical care, citing her ability to work from home, her hands-on approach to caring for the children, and her historically more-dominant caregiving role.

The court found positives in each parent's care of the children but had serious reservations about Nacrina's ability to provide a safe and stable home for the children given her volatile and abusive relationship with her second husband. The court specifically stated, "It is . . . inconsistent that safety is Nacrina's biggest issue when she has maintained a relationship with [her second husband]." It is concerning Nacrina could not remember the domestic violence incidents that

resulted in police intervention. It is also concerning she is maintaining her relationship with her second husband and violates a no-contact order. Nacrina's decisions reflect on her ability to provide emotional and physical safety, structure, and stability for the children.

The court noted Nick had a concrete plan for the future and his parents' help to provide a stable familial support system in his home. Under the circumstances, we agree with the district court that Nick provides more stability and a safer home for the children. We affirm the district court ruling placing the children in Nick's physical care.

With respect to Nacrina's alternative request for additional midweek overnight visitation "for continuity of contact," we discern no reason to disturb the court's ruling. *See In re Marriage of Salmon*, 519 N.W.2d 94, 95 (Iowa Ct. App. 1994) ("[W]e recognize the reasonable discretion of the trial court to modify visitation rights and will not disturb its decision unless the record fairly shows it has failed to do equity."). We affirm.

**AFFIRMED.**