# IN THE COURT OF APPEALS OF IOWA

No. 21-0586
Filed February 16, 2022

IN RE THE MARRIAGE OF NICHOLAS ADAM McCLENATHAN
AND KELLY RAE McCLENATHAN

Upon the Petition of
**NICHOLAS ADAM McCLENATHAN,**
        Petitioner-Appellee,

**And Concerning**
**KELLY RAE SCOTT, f/k/a KELLY RAE McCLENATHAN,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Poweshiek County, Lucy G. Gamon,

Judge.

        Kelly Scott appeals following the denial of her petition to modify her

dissolution decree.  **AFFIRMED.**

        Abigail L. Brown of Leff Law Firm, L.L.P., Iowa City, for appellant.

        Lucas W. Otto of Otto Law Office, PLLC, Newton, for appellee.

        Considered by Greer, P.J., Badding, J., and Gamble, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2022).

**GAMBLE, Senior Judge.**

Kelly Scott, formerly Kelly McClenathan, appeals the district court decision denying her application for modification of the child custody provisions of the parties' dissolution decree. We affirm the district court's ruling on modification.

**I. Background Facts & Proceedings**

Kelly and Nicholas McClenathan (Nick) married in 2009. They are the parents of two minor children, born in 2007 and 2010. In 2014, Kelly and Nick dissolved their marriage. A no-contact order has been in place since 2013, but it was modified after the divorce to allow text message contact about the children. Kelly requested a five-year extension in 2018, claiming Nick had violated the current order; Nick did not resist the extension.

The 2014 dissolution decree awarded the parties joint legal custody of the children. The parties stipulated Nick would have physical care of the children, with "reasonable and liberal visitation" for Kelly. The parties stipulated to living in and the children attending school in the Hartwick Ladora Victor (HVL) Community School District. The children continue to attend school and participate in activities in the HLV school district.

In March 2020, Kelly filed this action to modify the custody provision of the dissolution decree, seeking sole legal custody and physical care of the children. Among other claims, she asserted the children were not living with Nick and he had left them in his mother's care. The requested physical-care modification would move the children to the Williamsburg school district.

The district court held a two-day hearing on the matter in March 2021. The court issued a written ruling on March 30, finding no substantial change of

circumstances warranting a change in custody or physical care; the court continued the previously stipulated joint legal custody and physical care arrangement.

Kelly appeals. Additional facts will be set forth as necessary to address the issues raised on appeal.

## II. Standard of Review

"Actions for the modification of a dissolution decree are tried in equity." *In re Marriage of Roberts*, 954 N.W.2d 757, 760 (Iowa Ct. App. 2020). Our scope of review is therefore de novo. Iowa R. App. P. 6.907. "Though we make our own findings of fact, we give weight to the district court's findings." *In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016).

## III. Analysis

"[O]nce custody of children has been fixed it should be disturbed only for the most cogent reasons." *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983). "A party seeking modification of a dissolution decree must prove by a preponderance of the evidence a substantial change in circumstances occurred after the decree was entered." *Harris*, 877 N.W.2d at 440. The change in circumstances must be permanent and not have been contemplated by the court when the decree was entered. *Id.* "The party seeking modification of a decree's custody provisions must also prove a superior ability to minister to the needs of the children." *Id.* "If both parents are found to be equally competent to minister to the children, custody should not be changed." *In re Marriage of Hoffman*, 867 N.W.2d 26, 37 (Iowa 2015) (citation omitted).

To establish a substantial, permanent change in circumstances, Kelly cites her long-term sobriety, Nick's health problems, his living situation, his reliance on his mother to care for the children, and the children's preferences.

At the time of the parties' dissolution, each was in the early stages of recovery from methamphetamine addiction, which had caused a temporary removal of custody from both parents in 2013. Kelly testified to maintaining her sobriety for more than eight years. Nick also testified he has not used meth since the dissolution. We agree maintaining sobriety long-term since the dissolution is significant, but we do not think it is a change in circumstances outside the court's contemplation—both parents were on the path to sobriety at the time of the dissolution. Further, this change in circumstances applies equally to both parents, so it does not weigh in favor of a change in custody.

Next, Kelly asserts Nick's health issues affect his ability to parent the children. Nick has congestive heart failure, which he manages through medication and a pacemaker. In 2019, he had an intestinal tumor that was surgically removed with no reported continuing issues. The court noted "Nick appeared to the court as a large husky man, with no visible health issues that were impacting him in the courtroom." Moreover, aside from the medical procedures and recovery periods— which were temporary and are long past—Kelly presents no evidence Nick's health has affected his ability to parent the children. Nick's health has not made him less able to care for the children, and we do not find it a permanent substantial change in circumstances meriting a modification in custody.

Kelly claims Nick's living arrangement is another substantial change in circumstances. The parenting agreement portion of the dissolution stipulation

provides direction on what would constitute a change in circumstances meriting a hearing on a relocation: if either party moved to a different county or a change would remove the children from the stipulated school district. Six months after the decree, Nick and the children moved from his house in Hartwick to his parents' home in Victor. Both towns are within the HLV school district and did not affect the children's schooling. Nick's move brought him into a stable, familial household that supported and helped him with the children for the past seven years; it did not remove a support system. Kelly's current home is with her new husband and is in Williamsburg—in a different county and different school district. No deficiencies are alleged as to either home. As a whole, we do not consider the parties' living arrangements to constitute a substantial change in circumstances where Kelly has a superior ability to care for the children, so does not weigh in favor of modification.

Kelly next asserts Nick is not involved in the children's lives and has delegated his parental duties to his mother. She claims the help from Nick's mother, Jacque, and the fact that he does not attend all the sporting events and school conferences like Kelly does constitutes a material and substantial change in circumstances to warrant modification.

The district court found Nick "spends time with [the children] and cares for them to the extent that he is able, given his work schedule, the existence of the no-contact order, and to the extent of his abilities." Nick gets the children up in the morning, ready for school, and on the bus. Jacque was working from home and could take care of the children from the time they get out of school until Nick is home from work around 6:00 p.m. Jacque drives the children to and attends their

after-school activities, helps with appointments, and serves as the go-between on communications between Kelly and Nick.

Nick's ability to co-parent and attend activities and events where Kelly is present is affected by the no-contact order. The order provides Nick "shall stay away from [Kelly] and shall not be in [Kelly]'s presence except in a courtroom." The parenting agreement of the dissolution stipulation addresses the no-contact order, stating it "must be followed, unless such order is modified or dismissed. Neither party shall violate such order, despite any agreements made in this parenting agreement." Kelly renewed the order in 2018 with no modifications. Nick's compliance with the no-contact order, which was expressly referenced in the stipulations of the dissolution decree, to avoid school and sporting events where he knows Kelly will be present does not constitute a substantial change in circumstances.

Rather than have the children testify in front of their parents, the court requested the children submit sealed letters if they wanted to share information with the court. Each child submitted a letter indicating they wanted to live with Kelly. Each also mentioned not spending much time with Nick. In determining custody, the court considers "the child's wishes or whether the child has strong opposition" to the arrangement. Iowa Code § 598.41(3)(f) (2020). A child's wishes are not controlling, and we give them less weight in a modification action than would be given in an original custody proceeding. *See In re Marriage of Hunt*, 476 N.W.2d 99, 101 (Iowa Ct. App. 1991). We consider more than just the expressed preference; we also look at the child's age and educational level, the strength of the child's preference, the child's relationship with family members, and the

reasons given for the preference. *See In re Marriage of Jahnel*, 506 N.W.2d 473, 475 (Iowa Ct. App. 1993). Here, the court noted that while the children's preferences were entitled to some weight because "[i]n this case, the children's preferences do not seem to be based on any unfitness of their father, and it is not clear that these preferences represent any sort of change in circumstances." We agree with the district court's observation and do not find the letters represent a significant and permanent change in circumstances.

Kelly has established she could readily assume physical care of the children, however, she has established neither a substantial change of circumstances outside the court's contemplation at the time of the dissolution nor that she would provide superior care than Nick. *See Harris*, 877 N.W.2d at 440. We think both parents are equally competent to care for the children and, therefore, custody should not be changed. *See Hoffman*, 867 N.W.2d at 37.

As a final matter, both parties seek appellate attorney fees. "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion. In determining whether to award appellate attorney fees, we consider the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013) (internal quotation marks omitted) (citation omitted). "We also consider whether a party was obligated to defend the district court's decision. *Christy v. Lenz*, 878 N.W.2d 461, 469 (Iowa Ct. App. 2016). Considering these factors, we find the parties should pay their own attorney fees on appeal.

**AFFIRMED.**