# IN THE COURT OF APPEALS OF IOWA

No. 24-1104
Filed June 18, 2025

IN RE THE MARRIAGE OF BRETT GLEN ZUMBRUNNEN
AND LYNNDE KAY ZUMBRUNNEN

Upon the Petition of
BRETT GLEN ZUMBRUNNEN,
    Petitioner-Appellant,

And Concerning
LYNNDE KAY ZUMBRUNNEN,
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Marion County, Charles C. Sinnard, Judge.

Brett Zumbrunnen appeals a ruling modifying the decree dissolving his marriage to Lynnde Zumbrunnen. **AFFIRMED AS MODIFIED.**

Edward Fishman of Fishman Law Firm, Des Moines, for appellant.

Lynnde Kay Zumbrunnen, Pella, self-represented appellee.

Considered without oral argument by Tabor, C.J., and Schumacher and Chicchelly, JJ.

**SCHUMACHER, Judge.**

Brett Zumbrunnen appeals a ruling modifying the decree dissolving his marriage to Lynnde Zumbrunnen. He claims the district court erred by failing to grant his request for primary physical care of the parties' children and by requiring the parties to engage in counseling. Upon our review, we affirm as modified to eliminate the counseling requirement.

I.     **Background Facts and Proceedings**

Brett and Lynnde married in 2008. Their children, B.Z. and D.Z., were born in 2010 and 2013. Brett petitioned for dissolution of the marriage in 2018. In 2019, the parties stipulated all issues, and the court entered a dissolution decree awarding them joint legal custody and joint physical care of the children pursuant to a three-day/four-day schedule. The parties agreed the children would remain in the Pella Community School District.

In 2022, Brett moved to modify the decree, requesting physical care of the parties' children. Lynnde answered, maintaining it was in the best interests of the children to remain in the parties' joint physical care.

Trial took place in early 2024. Lynnde represented herself, and Brett appeared with his attorney. Since the dissolution, Brett had remained in the marital residence in the country near Knoxville. He is employed by the federal government as a contract consultant and earns $111,116 per year. Brett works weekdays from 6:30 a.m. to 3:00 p.m. Brett stated he works from home most of the time and he has flexibility to take care of the children's unexpected needs.[1]

---

[1] But Brett stated he was unable to take the children to their planned activities due to his work schedule.

Lynnde had been a stay-at-home mother during the parties' marriage. After the parties' dissolution, she became employed at Vermeer and worked several other part-time jobs. Lynnde decided to return to school to complete her nursing degree, because she believed it would allow her to provide "more stability and a better life" for the children. Lynnde obtained her nursing degree in April 2022 and became employed at Mercy in Des Moines. She works the "weekend package," which entails overnight shifts every Friday, Saturday, and Sunday,[2] and she earns $92,691 per year. After moving to a few "transitional" residences, Lynnde purchased a home in Pella in spring 2022.

D.Z. is in fifth grade, and B.Z. is in seventh grade. By all accounts, they are good students, well-liked by their teachers and peers, respectful, and insightful. They are involved in extracurriculars, including band and athletics, and enjoy spending time with friends. The children share strong bonds with both Brett and Lynnde and value the different parenting strengths of both. At Brett's home, the family does crafts and outdoor activities on the acreage. At Lynnde's home, the family spends time with friends and participates in school and community activities.

The parties agree they communicate poorly. For example, Brett complained Lynnde signs the children up for activities or schedules appointments without telling him; Lynnde countered she only does so because Brett "is always going to say no." Lynnde complained Brett refused to take the children to their scheduled

---

[2] Lynnde explained, "And the reason I work this schedule is because as a nurse the only set schedule that you can have is a weekend schedule." She further stated because Brett has the children on the weekends, "I chose to work this set schedule over the weekends because it gives me more availability to be with the children and you know provide for them during the week."

activities during his parenting time; Brett countered that he didn't agree to sign the children up in the first place. He acknowledged, however, that the children want to participate in activities. Brett maintained that changing the children's school to Knoxville should "be an option," but he agreed the children were thriving at school in Pella.

Brett requested primary physical care, although he acknowledged Lynnde is capable of taking care of the children's daily needs and the children are bonded to her. Lynnde requested the parties retain joint physical care, explaining, "it would be easy for me to say that I want primary care, but I know that's not what my children want. I know they love their father and they want to spend time with him."

The district court also heard testimony from the court-appointed child and family reporter, as well as the children. Ultimately, the court determined "there has not been a material and substantial change in circumstances to justify modifying those provisions of the Stipulation and Decree." The court further found "neither party showed they would be the 'better' parent, and shared care remains in the best interest of the children." Accordingly, the court denied Brett's modification request. But the court altered the parenting schedule slightly "to minimize the in-person contact between Brett and Lynnde and which reflects the current work schedule of the parties, to maximize each parent's available time with the children."[3] The court also modified the decree to require the parties to participate

---

[3] Instead of exchanging the children on Sundays (per the original decree), the court modified the decree for those exchanges to take place on Mondays. The corresponding exchange dates were modified to Thursdays and Fridays. The parties each continue to have seven overnights with the children every two weeks.

in counseling "to facilitate better communication and co-parenting between them." Brett appeals.

## II. Standard of Review

An action to modify a decree of dissolution of marriage is an equitable proceeding, which we review de novo. Iowa R. App. P. 6.907; *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015). We give weight to the factual findings of the district court, especially when considering the credibility of witnesses, but we are not bound by them. Iowa R. App. P. 6.904(3)(g). The best interests of the children are our primary consideration. Iowa R. App. P. 6.904(3)(o); *Hoffman*, 867 N.W.2d at 32.

## III. Modification of Physical Care

A parent seeking modification of a joint physical care arrangement must establish a substantial change of circumstances not contemplated by the district court when the decree was entered that is more or less permanent and must prove superior caretaking ability. *See In re Marriage of Harris*, 877 N.W.2d 434, 441 (Iowa 2016). To support his contention that a substantial change in circumstances warrants modification, Brett claims: the parties are "unable to timely and effectively communicate about the children and the children's needs"; Lynnde "discourages communication" between Brett and the children; and Lynnde prevents Brett from being a part of decisions and from knowing important information. He also claims Lynnde "prevents contact between the children and Brett by not following the right of first refusal" for childcare.

Yet the record reflects that the parties have been able to provide a consistent and stable routine for the children. The parents have worked together

to tweak the exchanges set forth in the decree to accommodate each other's work schedules for the most part.[4] They have collaborated on the children's schedules and adjusted for important events as well as can be expected considering their conflicting opinions on such matters. And although they agree their communication is not ideal, they have for the most part shown mutual respect and the ability to create an arrangement the children are thriving in and want to maintain.

The child and family reporter appointed by the district court met with the parents and the children and made detailed findings. She opined the children are "[v]ery happy in both households" and there was no reason "they needed to be pulled out of the Pella School District and moved to any school district." She further opined that "consistent points of contention in the shared care schedule" are being eliminated naturally as the children age. For instance, the children "weren't at babysitters as often," which eased the parents' concerns about whether they were honoring the other's right of first refusal. She also pointed out that the care schedule could be "easily remedied" to eliminate frustrations with pickups and drop offs—an adjustment the court ultimately made. She further opined that given the age of the children, the lack of safety or parenting concerns, and the fact that the children have their own phones, communication with the other parent should become more flexible and less "mandated." As she explained:

> I believe I also pointed out in my report both kids are getting older
> and will probably want to talk to each of you less than they do now,

---

[4] We observe Lynnde offered to take B.Z. to jazz band practices on Thursdays before school when the child was at Brett's home, because Brett's workday begins at 6:30 a.m. But Brett declined Lynnde's offer, and B.Z. missed practices on those days.

as is typical for adolescents, and so I think as they continue to get older that communication will settle into more of a rhythm based on what they want and what they are comfortable with.

In short, neither the child and family reporter's report nor her testimony supports the conclusion that a substantial change in circumstances warranted modification of physical care.

As the district court stated:

> For the vast majority of situations, joint legal custody and shared physical care have worked between the parties. From the evidence presented, the children appear to enjoy the time they spend with each parent. The parties have managed to have relatively few conflicts with regard to day-to-day parenting duties and have appeared to abide by the visitation terms established by the Stipulation. Both parties have participated in school conferences, medical appointments, extra-curricular activities, and other parenting exercises to a degree; while not necessarily equal, the Court views reasonable based on its experience.
>
> To be sure, the parenting styles and focus of Brett and Lynnde are different. But the Court cannot say that one parent would make a better custodian than the other. Both Brett and Lynnde have their own strengths as parents, and both have weaknesses.
>
> In the Court's view, it is a combination of the personality traits and styles of Brett and Lynnde that make them the most well-rounded parents for the children. Different personalities and different parenting styles are a part of many marriages and dissolutions. But parents of children in many of those scenarios have set aside their own disagreement with the style of the other parent to work in the best interest of the children. It appears to the Court that both parents are aware of their own shortcomings in communicating cordially and effectively with the other parent. It also appears to the Court that with this reminder from the Court to them, and some tweaks to the Stipulation and Decree, Brett and Lynnde's love for their children and commitment to the children's best interests should motivate them to work on overcoming their communication issues.

Upon review, we concur with the court's conclusion that Brett failed to carry his burden of proof to establish a substantial change in circumstances.[5] A party

---

[5] In light of our conclusion on this issue, we need not reach the merits of Brett's related claims as to whether he is the superior parent; whether the child support,

seeking modification of a dissolution decree "faces a heavy burden, because once custody of a child has been fixed, 'it should be disturbed only for the most cogent reasons.'" *Harris*, 877 N.W.2d at 440 (quoting *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983)). On this record, we conclude there was no reason for the court to disrupt the status quo. *But see In re Marriage of Cowern*, No. 23-1240, 2024 WL 2045686, at *3 (Iowa Ct. App. May 8, 2024) (observing physical-care modifications are appropriate "when discord between the parents undermines the continuing viability of joint physical care"). Accordingly, we affirm the denial of Brett's request for modification of joint physical care.

## IV.    Counseling Requirement

The district court found "there has been a material and substantial change in the portion of joint legal custody that requires the parties to consult and make mutual decisions regarding the upbringing of the minor children." The court therefore modified the joint legal custody provisions "to facilitate reasonable, rational, and civil communication." The court provided instructions related to the counselor and duration of ongoing sessions, and modified the decree as follows:

> <u>Counseling for Communication</u>: Brett and Lynnde shall participate in joint counseling as recommended by the Court to facilitate better communication and co-parenting between them. Counseling shall continue until notice is filed with the Court by the provider that no further benefits can be achieved by counseling. Counseling shall commence no later than 60 days following the entry of this modified decree.

Brett challenges the court's order, claiming the court "did not have legal authority to order such and it was not requested by the parties." We modify the

---

medical support, and shared expenses should be modified; and whether the children should attend school in Knoxville.

decree to eliminate the counseling requirement. *See, e.g.*, *Dole v. Harstad*, 278 N.W.2d 907, 910 (Iowa 1979) ("[N]o statutory authority allowed trial court to enter the order before us.[6] Neither did the court have any inherent power to do so. The practical problem trial court attempted to solve is more properly addressed by the legislature."). We therefore modify the court's order to eliminate this provision in the decree.[7]

## V.     Conclusion

We modify the district court's order to strike the "counseling for communication" provision in the decree. We affirm the order in all other respects. Costs of this appeal are assessed to Brett.

**AFFIRMED AS MODIFIED.**

---

[6] Contrasting, the court has the authority to require the parties to participate in reconciliation prior to a dissolution of marriage. *See* Iowa Code § 598.16(2) (2022) (providing for conciliation efforts prior to the granting of a dissolution decree).
[7] Even if we were to determine the court had inherent authority to order this counseling, on this record, such counseling was not likely to be constructive.